Commonwealth *v.* Paterick, Appellant.

2

Argued November 20, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*J. Kerrington Lewis, Joseph I. Lewis*, and *Lewis & Stockey*, submitted a brief for appellant.

*Robert F. Banks*, First Assistant District Attorney, with him *Joseph J. Nelson*, District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., March 29, 1976:

On the evening of April 2, 1974, David Glen Rimer, age 16, was struck and killed while riding his bicycle on Pennsylvania Route 18 in · West Salem Township. Appellant was charged and convicted by a jury of violation of Section 1027(a) and (b) of The Vehicle Code.[1]

---

1. Act of April 29, 1959, P.L. 58, §1027(a) and (b), 75 P.S. §1027(a) and (b).

Section 1027(a) imposes a duty upon the operator of a vehicle involved in an accident, resulting in injury or death to any person or damage to property, to stop. Section 1027(b) imposes a duty upon the operator to identify himself and render reasonable assistance if necessary. Appellant's post-verdict motions were denied and he was sentenced to pay a fine of $225 and to undergo imprisonment for a period of one to twelve months. Appellant now appeals to this court raising four issues.

Appellant first argues that the Commonwealth has offered into evidence two conflicting factual accounts and therefore has failed to prove its case as a matter of law. In this argument appellant attempts to show that the facts offered by the Commonwealth bring the instant case into the class of cases stemming from *Commonwealth v. New*, 354 Pa. 188 (1946). In that case the court stated:

"When two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances, a jury must not be permitted to guess which inference it will adopt, especially when one of the two guesses may result in depriving a defendant of his life or his liberty. When a party on whom rests the burden of proof in either a criminal or a civil case, offers evidence consistent with two opposing propositions, he proves neither." 354 Pa. at 221. See also *Commonwealth v. Zeringo*, 214 Pa. Superior Ct. 300, 304 (1969) and *Commonwealth v. Donald*, 192 Pa. Superior Ct. 276, 282 (1960). Cf., *Commonwealth v. Rothman*, 226 Pa. Superior Ct. 319, 323 (1973).

The basis for this argument is the testimony of Commonwealth's witness David Owen Dick. Mr. Dick testified that on the evening of David Rimer's death he was traveling south on Route 18 behind a blue and white vehicle which could have been either a Chevelle or a Buick Gran Sport. Appellant was driving a General Motors pickup truck at the time. Mr. Dick observed

sparks coming from underneath the blue and white car and then when reaching the point where the sparks had appeared he observed bicycle parts on the highway. On the side of the highway was the body of David Rimer. Mr. Dick checked the body and found it had no pulse. Mr. Dick further observed that at this time there was a stream of blood two and a half feet running from the upper portion of the body. Noticing that the car ahead of him had momentarily stopped in the parking lot of the Blue Sky Inn but then began leaving, Mr. Dick gave chase for approximately a half a mile at speeds up to 100 m.p.h. Realizing he could not catch the other vehicle Mr. Dick returned to the Blue Sky Inn and reported the incident to the police.

Appellant contends that it could have been the automobile observed by Mr. Dick which struck and killed the decedent and, therefore, the jury should not have been permitted to guess whether it was his truck or the other vehicle which struck the deceased. The fault in appellant's argument is that it fails to consider the monumental evidence against him. Appellant himself testified that on the night of the death of David Rimer he was traveling south on Route 18 in the area of the Blue Sky Inn when he heard a loud cracking noise and he observed that the right top corner of his windshield had been broken. Appellant testified that he pulled over, backed up a little and then not seeing anything proceeded on. Appellant assumed that he hit a speed limit sign. His pickup truck was later discovered by the police as a result of an anonymous tip. Yellow and red paint was found on the white front bumper, the right headlight was broken and the area immediately around it was damaged, the right portion of the windshield had a stellate fracture, and although the truck was generally dusty, the area of the damage was clean. The vehicle was seized and later impounded at a garage.

Anthony Balut, a chemist from the Pennsylvania State Police Crime Laboratory in Erie assisted in the

investigation of the incident and testified at trial as to his findings. It was determined microscopically and spectrographically that fiber taken from chrome trim on appellant's truck was identical to that of the victim's trousers. Hair taken from the right front fender of appellant's truck was identical to a hair specimen obtained from the victim at Greenville Hospital. Enlarged photographs of cloth impressions on appellant's truck were compared with enlarged photographs of the victim's trousers. Mr. Balut concluded that the weave and the pattern were similar. By the use of a stereo zoom microscope, chemical tests, and an infra-red spectrograph it was determined that red and yellow paint scrapings from the bumper of appellant's truck came from the same batch of paint as the paint on the victim's bicycle. Headlight glass found at the accident was found to have the same specific gravity as the glass removed from behind the headlight of the pickup truck. Finally microscopic and chemical tests of white paint which was scraped off the victim's right boot was found to be identical to paint scrapings taken from the white front bumper of appellant's truck.

On the basis of the evidence presented, the jury was not faced with "two equally reasonable and mutually inconsistent inferences." *Commonwealth v. New*, supra at 221. The conclusion that appellant hit and killed David Rimer without stopping to give assistance can clearly be drawn from the evidence. The existence of the other vehicle observed by Mr. Dick does not force the jury to guess between two equally reasonable inferences; it instead leads to the logical conclusion that another car passed over the bicycle parts which were scattered about the highway by appellant.

In appellant's second issue he contends that the trial judge erred in instructing the jury as follows: "Now, there are two possibilities, of course, and maybe more, and maybe neither of these possibilities, it's up to you. It's possible, of course, that the defendant had already

gone through this same scene and had struck the boy and that the parts of the bicycle were scattered about the road. Now, if that occurred, then the advent of the second vehicle on the scene does not affect the legal status of the first vehicle. Let's assume that it's the converse of that, and that the Chevelle, if there was such a vehicle, is the one that in fact struck the boy and caused the damage to the bicycle, scattering the parts around the road and that the defendant then came on subsequently, or later, regardless of how long, and he struck the boy or the bicycle, or either. Was there an obligation on his part to stop upon striking the boy or the bicycle or both? Well, yes. Just as much obligation as there would have been on him if he had been the first one through the scene of the accident. The fact that somebody may have hit property before you got to it, doesn't exclude you from the obligation of stopping to reveal your identity for whatever damage or injury you may have done, either to the body or to the personal property that may be on the road or the berm of the road."

Appellant contends that the charge is erroneous because the second possibility offered by the judge, i.e., that the blue and white vehicle hit the boy and the bicycle first and appellant hit only the scattered bicycle parts, constitutes a violation of Section 1027(d),[2] which imposes duties upon an operator of a vehicle which hits "unattended" property, and not a violation of Section 1027(a). Appellant contends that such a charge is erroneous because he was not charged with Section 1027(d). The fault in appellant's argument is that the charge made no reference to a Section 1027(d) violation. Furthermore, the charge cannot be construed as appellant contends because we do not have unattended property in this case unless we were to consider scattered bicycle parts with an injured or dead child next to them

---

2. Act of April 29, 1959, P.L. 58, §1027(d), 75 P.S. §1027(d).

unattended property. Since such a premise is absurd, appellant's argument fails.

Appellant's third issue concerns a statement made by the district attorney during his opening remarks. Appellant contends that the district attorney, Mr. Keck, said that appellant "is not charged with voluntary manslaughter at this time." After the district attorney's opening remarks were concluded appellant's counsel, Mr. Lewis, requested a side bar conference at which the following transpired:

"MR. LEWIS: Your Honor, the District Attorney in his opening remarks said to the jury, that the defendant is not charged with voluntary manslaughter at this time. It was an improper remark, highly prejudicial and I move the Court to declare a mistrial immediately.

THE COURT: First of all, you had an obligation to bring that to the Court's attention at that time. I'm not certain that's what he said.

MR. KECK: I think it was to that effect, that he is not charged with voluntary manslaughter.

THE COURT: The motion is denied.

(END SIDEBAR CONFERENCE)

THE COURT: I want to inform the jury as to the charges that have been filed in this case and to which the defendant is now required to stand trial. One is failure to stop at the scene of an accident and the other is failure to reveal identity at the scene of the accident. If the District Attorney made any mention of any kind to any other crime, you should disregard that in its entirety. You are concerned only with the charges that are filed in this case."

Appellant now contends that the failure to record the opening statement prejudices his right to review of the trial court's denial of his motion for a mistrial. We agree that an absence of a record on this matter could be prejudicial, but it must be noted that such prejudice

results from defense counsel's own inaction. The defense counsel has the burden of requesting that arguments to the jury be transcribed. See *Commonwealth v. Banks*, 454 Pa. 401, 410 (1973), and Act of January 8, 1960, P.L. (1958) 2116, §1, 17 P.S. §1802. In this case, defense counsel made no such request. He cannot now complain that the opening remarks are not available to him.

Nevertheless, if we assume that the comment attributed to the district attorney was, in fact, made, appellant would still not be entitled to a new trial. This is because whatever possible prejudice would have resulted from such comment was cured by the trial court's immediate cautionary instruction to the jury. See *Commonwealth v. Martinolich*, 456 Pa. 136, 148-150 (1974) and *Commonwealth v. Wiggins*, 231 Pa. Superior Ct. 71, 77 (1974). Cf., *Commonwealth v. Toth*, 455 Pa. 154, 157, n. 2 (1974).

Appellant's last issue concerns the presence of the victim's clothing in the court room. Upon noticing the clothing, appellant's counsel requested a sidebar conference at which the following transpired:

"MR. LEWIS: I have noticed today that the District Attorney has the blue denim pants that have never been put into evidence in a box with blood and it's outside in front of the jury that has never been placed in evidence. I object. It's prejudicial and I think it's highly unfair.

THE COURT: Well, I don't know what you are talking about. I can't see it from where I'm sitting. Get the box and bring it up here just as it is. Are you saying that the portion of the pants—

MR. LEWIS: Sure, you can see it right on there, it's dry blood.

THE COURT: I can't determine that it's blood. It could just as well be dirt. We have a pair of dirty bluejeans in the box. Put something over top of it. Why has it been exposed up to this time?

MR. KECK: I don't have the slightest idea.

THE COURT: Reference was made having taken certain pieces of clothing, samples by the pathologist. There is an obligation by the Commonwealth to make evidence available. If you would desire to examine concerning it, I don't know why it was left where it was, but I certainly don't see anything prejudicial about it.

MR. KECK: The evidence was in the Court Reporter's Office, and it was included and we brought it in and set it in front of counsel table. We haven't gotten them out and waved them around. There is a photograph of them in evidence.

THE COURT: Just take the box and put it in the corner."

Appellant's contention that the presence of the clothing in the court room mandates a new trial is without merit for several reasons. First it is very doubtful that the clothing was noticeable enough to draw anyone's attention. The trial judge did not notice the clothing and when it was pointed out he said the stains could just as well be dirt. Assuming the clothing was as gruesome as appellant contends it would have been incumbent on appellant to take further action. Appellant could have sought immediate, cautionary instructions, see *Commonwealth v. Biebighauser*, 450 Pa. 336, 349, n. 4 (1973), or appellant could have requested a mistrial. Since appellant took neither of these actions we can only assume that he was satisfied by the removal of the clothing from the jury's sight.

Judgment affirmed.

JACOBS, J., dissents.