IN THE

# Arizona Court of Appeals
## Division One

---

STATE OF ARIZONA, *Petitioner*,

*v.*

THE HONORABLE ERIC E. GORDON, Judge of the SUPERIOR COURT
OF THE STATE OF ARIZONA, in and for the County of MOHAVE,
*Respondent Judge*,

GREGORY JAMES OWEN, *Real Party in Interest.*

No. 1 CA-SA 23-0162
FILED 2-13-2024

---

Petition for Special Action from the Superior Court in Mohave County
No. CR2023-00497
Lake Havasu Consolidated Court No. M0844TR2022000209
The Honorable Eric E. Gordon, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

---

COUNSEL

Lake Havasu City Attorney's Office, Lake Havasu City
By Sherman Jackson
*Counsel for Petitioner*

Debus & Kazan, Ltd, Phoenix
By Lawrence I. Kazan, Gregory M. Zamora
*Counsel for Real Party in Interest*

---

## OPINION

Judge Cynthia J. Bailey delivered the opinion of the Court, in which Presiding Judge James B. Morse Jr. and Judge Brian Y. Furuya joined.

---

**B A I L E Y,** Judge:

¶1        Arizona Revised Statutes ("A.R.S.") section 28-645(A)(3)(a) ("red-light statute") requires vehicular traffic to stop at a red light.  Under A.R.S. § 28-672(A)(1) ("enhanced penalty statute"), "[a] person is guilty of causing serious physical injury or death by a moving violation if the person violates [the red-light statute] and the violation results in an accident causing serious physical injury or death to another person."  We address whether, for the enhanced penalty statute to apply, a driver in violation of the red-light statute must have already entered an intersection before an accident occurs.

¶2        The enhanced penalty statute does not require a vehicle to have entered the intersection before causing the accident.  A.R.S. § 28-672(A)(1).  We accept special action jurisdiction, grant relief to the State, vacate the superior court's decision, and remand to the municipal court to conduct further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶3        We view the facts in the light most favorable to sustaining the defendant's conviction.  *State v. Thompson*, 252 Ariz. 279, 287 n.3 (2022).

¶4        While driving his motorhome on State Route 95 in Lake Havasu City, Gregory James Owen rear-ended a Jeep Grand Cherokee that stopped for a red light at an intersection.  The force of the collision propelled both vehicles through the intersection, causing the death of a passenger in the Jeep.

¶5        The State charged Owen with causing death by a moving violation, a class 1 misdemeanor.  *See* A.R.S. § 28-672(A)(1), (I).  After a two-day bench trial, the municipal court found that the Jeep came to a complete stop at the red light, Owen "was unable to control his speed to avoid the accident," and the light facing Owen was red when Owen rear-ended the

2

Jeep and entered the intersection.[1]  The municipal court then found Owen guilty as charged.

¶6          Owen appealed the verdict to the superior court, arguing that he did not commit a red-light moving violation, and, even if he did, the violation did not cause the victim's death because "the accident happened before the intersection, and the predicate moving violation can only happen upon entering an intersection."  Thus, Owen maintained, even though he failed to stop before the intersection and entered it when the light was red, the "accident" occurred before he went through the red light.

¶7          The superior court agreed that Owen violated the red-light statute because he "failed to stop his vehicle before it entered the intersection, and such entrance did not occur until the signal had already switched to red."  But the court concluded that Owen did not violate the enhanced penalty statute as a matter of law because the initial impact occurred before Owen's motorhome entered the intersection, "so it was not that violation that resulted in the accident."  The superior court reversed the municipal court and directed a verdict of acquittal.

¶8          The State filed this special action petition, challenging the superior court's interpretation of the red-light and enhanced penalty statutes.  A.R.S. §§ 28-645(A)(3)(a), -672(A)(1).

## SPECIAL ACTION JURISDICTION

¶9          With limited exceptions not applicable here, a party may not appeal the judgment of the superior court in an action appealed from a municipal court.  *See* A.R.S. § 22-375(B).  Thus, the State has no equally plain, speedy, and adequate remedy by appeal.  *See* Ariz. R.P. Spec. Act. 1(a); *Guthrie v. Jones*, 202 Ariz. 273, 274, ¶ 4 (App. 2002) (accepting special action jurisdiction "when, as here, the superior court has acted as an appellate court" and "a special action is [the petitioner's] only means to seek relief").  The State's petition also raises a legal question of first impression.  *See State ex rel. Romley v. Martin*, 203 Ariz. 46, 47, ¶ 4 (App. 2002) ("Special

---

[1] The record contains video evidence of the accident, which shows the light for traffic crossing perpendicular across the highway in front of Owen and the Jeep turned green before the accident, which in turn supports the municipal court's conclusion that the light Owen was facing must have been red when Owen entered the intersection.  Thus, nothing leads us to conclude that the municipal court's ruling is clearly erroneous or an abuse of discretion.

action jurisdiction is appropriate in . . . issues of first impression, [and] cases involving purely legal questions." (citing *Luis A. v. Bayham-Lesselyong*, 197 Ariz. 451, 452–53, ¶ 2 (App. 2000))). We therefore accept special action jurisdiction.

## DISCUSSION

**¶10** We review issues of statutory interpretation de novo. *State ex rel. Montgomery v. Harris*, 234 Ariz. 343, 344, ¶ 8 (2014). "Absent ambiguity or absurdity, our inquiry begins and ends with the plain meaning of the legislature's chosen words, read within the 'overall statutory context.'" *Welch v. Cochise Cnty. Bd. of Supervisors*, 251 Ariz. 519, 523, ¶ 11 (2021) (quoting *Rosas v. Ariz. Dep't of Econ. Sec.*, 249 Ariz. 26, 28, ¶ 13 (2020)). *See also S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 286, ¶ 31 (2023) ("Statutory interpretation requires us to determine the meaning of the words the legislature chose to use. We do so . . . according to the plain meaning of the words in their broader statutory context. . . ."). Words are "construed according to the common and approved use of the language," A.R.S. § 1-213, and we "give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous," *Nicaise v. Sundaram*, 245 Ariz. 566, 568, ¶ 11 (2019) (citing *City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, 552–53, ¶¶ 31–34 (2005)).

**¶11** The red-light and enhanced penalty statutes are unambiguous. The red-light statute states that "vehicular traffic facing a steady red signal alone shall stop before entering the intersection and shall remain standing until an indication to proceed is shown." A.R.S. § 28-645(A)(3)(a). And the enhanced penalty statute provides that "[a] person is guilty of causing serious physical injury or death by a moving violation if the person violates [the red-light statute] and the violation results in an accident causing serious physical injury or death to another person." A.R.S. § 28-672(A)(1).

**¶12** The municipal court and superior court agreed that Owen violated the red-light statute by running the red light and that Owen's collision with the Jeep caused the death of another person. The remaining issue is whether Owen's red-light violation resulted in the accident that caused the victim's death.

**¶13** The State argues that the "accident" that caused the victim's death "did not stop/end before the intersection" and was instead the entire sequence of events that occurred, from the time Owen's motorhome hit the back of the Jeep, to both vehicles careening through the intersection, and

ending shortly after the Jeep's subsequent collision with another vehicle.[2] Owen argues we should focus on where the initial collision occurred and, because the collision occurred *before* the intersection, he did not violate the enhanced penalty statute. In his argument, Owen substitutes the word "collision" for the word "accident" in the enhanced penalty statute, arguing that "[a]ny entry into the intersection against the red signal occurred post-collision." The superior court agreed with Owen's argument and limited its view of the accident to the initial impact of the motorhome colliding with the Jeep.

¶14 The statute uses the term "accident," and our focus is on the statutory text—not purported synonyms. *Welch*, 251 Ariz. at 523, ¶ 11. The legislature enacted the enhanced penalty statute in 1998, but neither the original statute, nor subsequent amendments, defined "accident." A.R.S. § 28-672; 1998 Ariz. Sess. Laws, ch. 243, § 1 (2nd Reg. Sess.) (H.B. 2327). We may reference dictionaries when statutory terms are undefined. *See Harris*, 234 Ariz. at 344, ¶ 9. Around the time the enhanced penalty statute was adopted, dictionary definitions of "accident" included "[a]n unexpected and undesirable event." *Accident*, Webster's II New Riverside University Dictionary (1994). In contrast, definitions of "collision" included "[t]he act or process of colliding." *Collision*, Webster's II New Riverside University Dictionary (1994). Thus, an "accident" is not necessarily synonymous with a "collision."

¶15 Interpreting an "accident" as encompassing more than a single "collision" is consistent with our decision in *State v. Powers*, 200 Ariz. 123, 126, ¶ 9 (App. 2001). There, we noted that "[a]s commonly understood, only one accident scene exists even though accidents often involve multiple victims and impacts." *Id.* It also reflects how courts in other states have interpreted "accident." *See Commonwealth v. Satterfield*, 255 A.3d 438, 447 n.14 (Pa. 2021) ("A vehicular accident may include any number of vehicles, impacts, collisions, deaths, and injuries." (citing cases)); *see also Nield v. State*, 677 N.E.2d 79, 82 (Ind. App. 1997) ("In the context of vehicular collisions, we conclude that an 'accident' means the entirety of an occurrence that results from a common initiating event, regardless of

---

[2] The State further argues that, to commit a red-light violation under the red-light statute, one need not enter the intersection, but must merely fail to stop and remain standing before the light until the traffic light changes such that an indication to proceed is shown. We do not address this argument because Owen's motorhome entered the intersection, and we will not decide hypothetical questions. *See generally Contempo-Tempe Mobile Home Owners Ass'n v. Steinert*, 144 Ariz. 227, 229 (App. 1985).

whether more than two vehicles were involved."); *Commonwealth v. Wisneski*, 29 A.3d 1150, 1153–54 (Pa. 2011) ("The terminus of an accident is the completion of all the physical on-scene events with a direct nexus to the onset of the incident, a conclusion particularly apropos where more than one vehicle is involved."). Thus, because an "accident" may involve multiple "collisions," Owen's and the superior court's view is too narrow, as it simply treats the accident as the moment of the initial collision. But a driver violates the enhanced penalty statute when his moving violation results in an *accident*, not a singular collision. *See* A.R.S. § 28-672(A)(1).

¶16 Finally, had the legislature intended to limit the enhanced penalty statute to the moment of impact, it could have done so by using the narrower term "collision" or expressly requiring the collision to occur within the intersection. *See id.; Leibsohn v. Hobbs*, 254 Ariz. 1, 5, ¶ 14, (2022) (noting the significance of legislative language in one statutory section compared to another); *see also State v. Marshall*, 197 Ariz. 496, 504, ¶¶ 27–28 (App. 2000) (stating, "[h]ad the legislature intended to restrict the application of the statute . . . it could have done so by substituting" different words than the words chosen). But the legislature chose "accident" here, despite expressly using the term "collision" in other statutes. *See, e.g.,* A.R.S. § 28-735 (establishing a civil penalty when a driver fails to leave a safe distance between his or her vehicle and a bicycle, and "*the violation results in a collision*," causing serious physical injury or death (emphasis added)); A.R.S. § 28-855(C) (requiring drivers approaching yield signs to yield the right-of-way to vehicles in the intersection, and "[i]f after driving past a yield sign without stopping the driver is involved in a *collision with a vehicle in the intersection*, the collision is prima facie evidence of the driver's failure to yield the right-of-way" (emphasis added)). The enhanced penalty statute references an accident, not a collision, and it does not require a collision to occur within the intersection. A.R.S. § 28-672(A)(1). Thus, when determining whether an accident resulted from a red-light violation, a court must consider an accident as a continuous event in which the traffic violation causes an event that results in death or injury.

¶17 Next, we address Owen's contention that a failure to stop before entering an intersection at a red light cannot "result[] in" an accident when the initial collision occurs just before the intersection. *See* A.R.S. § 28-672(A)(1). Owen asserts "the specific violation alleged must be the cause of the accident" and argues his red-light violation did not result in the accident. We agree with Owen that, for the enhanced penalty statute to apply, the alleged moving violation must result in the accident. A.R.S. § 28-672(A)(1). In other words, the violation must be the but-for cause of the accident. But we disagree with Owen's assertion that a red-light violation

cannot be the cause of an accident when the initial collision occurs before the intersection.

¶18    The legislature did not define "results in" within the enhanced penalty statute, but A.R.S. § 13-203 details the required causal relationship between "conduct" and "result." Section 13-203(A) applies to the enhanced penalty statute. *See* A.R.S. § 13-102(D) ("Except as otherwise expressly provided, or unless the context otherwise requires, the provisions of this title shall govern the construction of and punishment for any offense defined outside this title."). Under A.R.S. § 13-203(A), "Conduct is the cause of a result when both of the following exist: 1. But for the conduct the result in question would not have occurred [and] 2. The relationship between the conduct and result satisfies any additional causal requirements imposed by the statute defining the offense." As applied here, the required conduct is the violation of the red-light statute and the required result is the accident causing serious physical injury or death. *See* A.R.S. § 28-672(A)(1), -645(A)(3)(a).

¶19    The red-light statute requires vehicular traffic to stop at an intersection with a red light and remain standing until receiving an indication to proceed. A.R.S. § 28-645(A)(3)(a). When, as here, a driver fails to stop and remain standing at a red light and then hits another vehicle, immediately propelling both vehicles into the intersection, the entire event—from initial collision to when the vehicles ultimately cease movement—is an accident that resulted from the driver's failure to stop at the red light. *Cf. Brogdon v. State*, 683 S.E.2d 99, 104 (Ga. App. 2009) (interpreting Georgia's red-light statute, which is substantially similar to A.R.S. § 28-645(A)(3)(a), and concluding that the statute "requires that a driver facing a red traffic light stop behind the stop line or crosswalk and also behind those vehicles stopped in observance of the traffic light").

¶20    Owen also argues that viewing the accident as one continuous event may allow "the predicate traffic violation to occur at any time during the 'accident,'" including when the moving violation is unrelated to the accident. To support his argument, Owen poses a hypothetical in which a collision occurs 100 yards before the intersection and the vehicle rolls into the intersection after the light turns red. Even if it is possible that an accident may be too attenuated from an alleged moving violation to establish causation, that is not this case. Owen's failure to stop at a red light directly resulted in both vehicles being immediately propelled into the intersection.

## CONCLUSION

**¶21**        We accept special action jurisdiction and hold that the plain language of the enhanced penalty statute does not require a vehicle to have entered the intersection before the initial collision occurs when the accident comprises one continuous event resulting from a driver's failure to stop at a red light.  A.R.S. § 28-672(A)(1).  We therefore grant relief to the State, vacate the superior court's decision, and remand to the municipal court to conduct further proceedings consistent with this opinion.



AMY M. WOOD • Clerk of the Court
FILED:    AA