985 A.2d 1283

COMMONWEALTH of Pennsylvania, Appellee

v.

Neal Lamont PATTON, Appellant.

Supreme Court of Pennsylvania.

Argued March 2, 2009.

Decided Dec. 30, 2009.

308

310

Sandra Preuhs, Allegheny County District Attorney's Office, Michael Wayne Streily, Pittsburgh, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## OPINION

Justice EAKIN.

Appellant shot and killed his brother, Anthony, at a local bus stop. After fleeing to Cleveland, Ohio, he was arrested and returned to Pennsylvania. Loenell Howze, who was with Anthony at the bus stop, initially refused to assist the Commonwealth's investigation; he later explained his initial unwillingness to cooperate was a result of his upbringing. An investigating officer noted "there is a perception that talking to the police is bad" in Howze's neighborhood. N.T. Trial, 2/23/05, at 37.

Several days after the shooting, Howze decided to cooperate with police. Howze noted his cousin killed two of his relatives after killing another person, and he believed if someone had cooperated in the investigation of the first killing, his cousin would not have been able to kill the other relatives. Howze explained at trial this family tragedy inspired him to cooperate with police.

■ The Commonwealth charged appellant with criminal homicide, but did not seek the death penalty. Appellant admitted he picked up the gun prior to going to the bus stop, which he knew Anthony frequented. A forensic pathologist testified the gun shot wound to Anthony's head was consistent with a victim lying on the ground, as Howze described. A criminalist examined the gun and testified it required at least six pounds of force to pull the trigger, making it unlikely the gun was accidentally discharged twice. Therefore, sufficient evidence supported the jury's first degree murder verdict. *See Commonwealth v. Spotz,* 562 Pa. 498, 756 A.2d 1139, 1148 (2000) (where evidence of first degree murder was overwhelming, court refused to grant new trial); *Commonwealth v. Dennis,* 552 Pa. 331, 715 A.2d 404, 409 (1998) (when evidence of guilt is such that there is no indication outcome of case would have been different absent error, no new trial is warranted).

At appellant's jury trial, the prosecutor, in her closing argument, stated:

Ladies and gentlemen, I'm asking you to find a verdict of guilty of murder in the first degree and send a message back that [Howze] did the right thing. The system works and it's right to come forward and tell what happened and the second message I want to send to [appellant] is to tell him he can't get away with murder.

N.T. Trial, 2/25/05, at 107–08. Appellant objected, and the trial court agreed to give a curative instruction but failed to do so. The jury convicted appellant of first degree murder, and the trial court imposed the mandatory life sentence.

The Superior Court affirmed the judgment of sentence. *Commonwealth v. Patton,* 936 A.2d 1170, 1178 (Pa.Super.2007). Before the Superior Court, appellant argued the prosecutor's "send a message" arguments were *per se* prejudicial under *Commonwealth v. DeJesus,* 580 Pa. 303, 860 A.2d 102 (2004), which held "penalty phase arguments requesting that the jury send a message with its verdict are prejudicial *per se.*" *Id.,* at 119. Noting *DeJesus* was a capital case, the Superior Court concluded *DeJesus* prohibited "send a mes-

sage" arguments in support of the imposition of the death penalty, but concluded the *DeJesus per se* rule was inapplicable when the remark was not made in an effort to procure a death sentence. The court found the prosecutor's remark inappropriate, but in context found it was not egregious enough to deny appellant a fair trial. The court construed the remark as merely encouraging the jury to commend Howze for his cooperation with police, and not as an attempt to diminish the jury's objectivity. The court further held "the prosecutor's comment that the jury should send a message that '[[a]ppellant] can't get away with murder' was not reversible error." *Patton,* at 1175.

◼ We granted allowance of appeal to determine "[w]hether the *per se* rule of *DeJesus* applies in non-capital cases; if not, was the within request improper and prejudicial?" *Commonwealth v. Patton,* 598 Pa. 8, 952 A.2d 1166, 1166 (2008) (table). This is a purely legal question; thus, our standard of review is *de novo,* and our scope of review is plenary. *In re Milton Hershey School,* 590 Pa. 35, 911 A.2d 1258, 1261 (2006) (citations omitted).

Appellant argues the *DeJesus* presumption of prejudice should be applied to all criminal proceedings. Appellant contends a *per se* rule is necessary to force prosecutors to abide by this Court's prohibition; appellant argues prosecutors make improper "send a message" arguments to secure a conviction, then hope the appellate court will conclude the improper argument was harmless error. Appellant admits there are differences between capital cases and non-capital cases,[1] but asserts juries in non-capital cases are equally vulnerable to these emotional arguments. Appellant notes this case, where he shot his own brother, was especially

---

1. There are procedural differences between capital and non-capital cases. *See, e.g.,* Pa.R.Crim.P. 801 (qualifications for defense counsel in capital cases); *Commonwealth v. Natividad,* 595 Pa. 188, 938 A.2d 310, 325 (2007) (*per se* rule against religious references in prosecutor's arguments limited to those made in favor of death sentence). And as this Court recognized in *DeJesus,* a jury's guilt determination depends upon relatively objective determinations, whereas the imposing of a death sentence includes subjective considerations in weighing aggravating and mitigating circumstances. *DeJesus,* at 116.

emotional and contends "send a message" arguments destroy the ability of juries to objectively deliberate and weigh the evidence.

Appellant further argues the prosecutor's remarks, even if not prejudicial *per se*, were prejudicial enough in this case to warrant a new trial. Appellant admits there is sufficient evidence to convict him of third degree murder; however, he contends the evidence supporting his first degree murder conviction is not overwhelming. Appellant, characterizing the remark as sending a message to a community of reluctant witnesses, submits the prosecutor's remark meant any verdict besides first degree murder would devalue cooperation with the police.

The Commonwealth argues *DeJesus* should be limited to the penalty phase of capital cases. It contends the *DeJesus per se* rule is inextricably linked to a jury's balancing of aggravating and mitigating circumstances under Pennsylvania's death penalty statute, 42 Pa.C.S. § 9711(c)–(e). The Commonwealth suggests prosecutors have not abused "send a message" remarks, which in non-capital cases are properly examined on a case-by-case basis, with the focus on whether the remarks deprived the defendant of a fair trial and impartial jury. The Commonwealth contends the remark asked "the jury to demonstrate *to Loenell Howze* that 'he did the right thing.'" Commonwealth's Brief, at 29 (emphasis in original) (quoting N.T. Trial, 2/25/05, at 107–08). Thus, the Commonwealth submits Howze was the only recipient of the message, and the remark did not have an unavoidable effect of preventing the jury from objectively weighing the evidence and rendering a true verdict.

 It is well settled a prosecutor may employ oratorical flair in arguing to the jury. Such arguments do not constitute prosecutorial misconduct when the remarks are based upon the evidence or proper inferences deduced therefrom. An improper statement during the prosecutor's closing argument will warrant a new trial only when the unavoidable effect of the statement is to prejudice the jury against the defendant,

or prevent it from weighing the evidence objectively and rendering a true verdict.

However, this Court has stridently condemned prosecutorial statements urging a criminal jury to "send a message" to the community or the criminal justice system. A jury is sworn to render a verdict based solely on the evidence presented; arguing extraneous reasons for a verdict misdirects the jury from that purpose. Such arguments inject irrelevant matters into the deliberation; they invite the jury to focus on matters beyond its ken.

Portraying the community as being under an attack, a prosecutor may not ask the jury to respond to the attack with its verdict. *Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221, 237 (1995). Even when we have found such remarks to be harmless, we admonished "all parties in criminal matters before any court in the Commonwealth to refrain from such exhortation in the future." *Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190, 203 (1997). In *Hall*, this Court found the prosecutor's remark to be harmless because the prosecutor was summarizing the crime and "neither caused the jury to form a fixed bias or hostility towards appellant nor did they ask the jury to send a message to the judicial system or . . ." the community. *Id.* Such a remark, when directed exclusively to events underlying the case, will be evaluated on a case-by-case basis. *See Commonwealth v. Diggs*, 597 Pa. 28, 949 A.2d 873, 884–85 (2008) (finding prosecutor's statement, during penalty phase closing argument, that defendant committed crime in front of victim's children was harmless).

In *DeJesus*, the prosecutor, during the penalty phase, argued to the jury:

> *When you think of the death penalty, there are messages to be sent. There's a message on the street saying, look at that, he got death, you see that, honey, that's why you live by the rules, so you don't end up like that. Because they're in these bad neighborhoods . . . . You also send a message in prisons.* When you peep in that bus and talk and whisper, you can say, death penalty. Maybe you've got just

one inmate sitting there going, well, he got death, this is serious, I don't want to end up like that. Maybe your penalty you'll save one guy, to scare him straight.

*DeJesus*, at 113 (emphasis in original). The jury imposed the death penalty, and on appeal this Court observed such "send a message" statements had been "narrowly tolerated," and we had reminded prosecutors to avoid using such arguments. *Id.*, at 115–16.[2] *DeJesus* concluded a *per se* prohibition was necessary to prevent future use of these prejudicial statements. We have recently observed *DeJesus* "held that 'penalty phase arguments requesting that the jury send a message [to society] with its verdict are prejudicial *per se*.' " *Diggs*, at 884 (quoting *DeJesus*, at 119).

 The *DeJesus per se* rule is rooted in the unique role the jury plays in capital cases. *See DeJesus*, at 119. The *per se* rule is intertwined with death penalty sentencing because it is essential to prevent emotional appeals from upsetting a death penalty jury's unique task of weighing specific aggravating and mitigating circumstances and the unique consequences of a verdict based on improper considerations. In non-capital cases, as juries do not weigh aggravating and mitigating circumstances, a *per se* rule is not necessary. In these less emotional cases, evaluation of the allegedly offending statement may be done on a case-by-case basis. The Superior Court correctly determined the *DeJesus per se* rule does not apply to non-capital cases, and we decline appellant's invitation to extend *DeJesus*.[3]

2. Notably, *DeJesus* discussed another *per se* rule, established in *Commonwealth v. Chambers*, 528 Pa. 558, 599 A.2d 630, 644 (1991), prohibiting referring to religious precepts in the penalty phase of capital cases. *DeJesus*, at 114–15. *DeJesus* juxtaposed prior "send a message" cases with cases preceding *Chambers*, noting in both situations this Court "narrowly tolerated" such prejudicial arguments to the jury, only to have prosecutors disregard such warnings. *Id.*, at 115. The *Chambers per se* rule is limited to arguments in favor of a death sentence. *Natividad*, at 325.

3. We do not favor *per se* rules in error review. *See, e.g., Commonwealth v. Greer*, 597 Pa. 373, 951 A.2d 346, 359 (2008) (declining to adopt *per se* rule governing situation when trial court learns numerical division of deliberating jury); *Commonwealth v. Druce*, 577 Pa. 581, 848 A.2d 104, 109 (2004) (refusing to adopt *per se* rule requiring recusal of judge for

It is not the words "send a message" that automatically constitutes impropriety, but that phrase is unwise and inevitably suspect—it is inherently a dangerous phrase in a criminal argument, inviting scrutiny whenever spoken. It offends because the jury's role is to render a verdict based on the evidence, not based on the effect of that verdict. Indeed, the prosecutor lessened any potential prejudice of her remarks by cautioning the jury: "You took an oath to listen to the facts, to apply the law to the facts and render a verdict. It is time to honor your oath. You need to the [sic] look at the law and look at the facts and that's what I'm asking you to do." N.T. Trial, 2/25/05, at 97. In this, the prosecutor was exactly right—juries are there to find facts and apply the law to them—they are not empanelled to send telegrams.

Here, however, urging the jury "to tell [appellant] he can't get away with murder," *id.*, at 108, is not an improper "send a message" statement. Prosecutorial remarks encouraging a jury to "send a message" to the defendant, rather than the community or criminal justice system, do not invite consideration of extraneous matters and are not misconduct. *Commonwealth v. Peterkin*, 538 Pa. 455, 649 A.2d 121, 129 (1994). In *Peterkin* we found no impropriety when the prosecutor merely asked the jury to impose a death sentence as a means of sending a message to the defendant. Every verdict sends a message of some sort to the parties, and clearly the message "guilty" is sought by prosecutors as a matter of course. *DeJesus* did not alter *Peterkin*. See *DeJesus*, at 116 ("The *Peterkin* issue is not presented in the case *sub judice:* the prosecutor here did not exhort the jury to send a message to [DeJesus].").

The portion of the prosecutor's remark asking the jury to send a message to Howze is less clear but does not warrant a new trial. Notwithstanding appellant's assertions, the prosecutor's remark asked the jury to send a message to a

violations of Judicial Code of Conduct); *Commonwealth v. Mack*, 568 Pa. 329, 796 A.2d 967, 971 (2002) (plurality) (rejecting argument consent to search is *per se* involuntary when police inform suspect they "would have to get a search warrant" if suspect declines).

witness, not to any wider segment of the community. It was established Howze was reluctant to cooperate with police, and he testified a family tragedy motivated him to cooperate. The prosecutor, addressing the issue of Howze's motivation, did not incite prejudice against appellant or deny him a fair trial.

We note, however, that the request here was still unwise at best, and prosecutors would do well to put "send a message" on the taboo list, lest this Court be compelled in the future to send its own message in the form of a rule with more restraints.

We find the prosecutor's remark regarding Howze did not deny appellant a fair trial or destroy the objectivity of the jury, preventing it from reaching a true verdict. Furthermore, the prosecutor's remark regarding appellant was not improper. Therefore, appellant is not entitled to a new trial.

The order of the Superior Court is affirmed.

Jurisdiction relinquished.

Justices BAER, McCAFFERY and GREENSPAN join the opinion.

Chief Justice CASTILLE files a dissenting opinion in which Justices SAYLOR and TODD join.

Chief Justice CASTILLE, dissenting.

I respectfully dissent, as I disagree that "send a message" arguments by counsel are *per se* prejudicial only in the capital penalty phase context.

The Majority notes that "this Court has stridently condemned prosecutorial statements urging a criminal jury to 'send a message' to the community or the criminal justice system," explaining that such comments are at best extraneous and irrelevant to the jury's task at hand and at worst create the potential for severe prejudice. Majority Op. at 314, 985 A.2d at 1287. The Majority notes a distinction between "send a message" statements by prosecutors that address the facts of the case at hand or the defendant directly, which are

to be evaluated on a case-by-case basis, and statements that exhort the jury to "send a message" to the judicial system or the community at large, which exceed prosecutorial license. *Id.* at 1286–88. In doing so, the Majority quotes from *Commonwealth v. DeJesus,* 580 Pa. 303, 860 A.2d 102 (2004), which held that "send a message" statements by the Commonwealth are *per se* prejudicial in the context of the capital penalty phase. Majority Op. at 315, 985 A.2d at 1288. But the Majority declines to extend *DeJesus's per se* rule to the non-capital penalty context. In the Majority's view, a *per se* rule fits in the capital penalty context because the particular concerns and consequences of the death penalty inquiry must be shielded from "emotional appeals" that can "[upset] a death penalty jury's unique task of weighing specific aggravating and mitigating circumstances." *Id.* By contrast, the Majority asserts, in "less emotional" non-capital cases, "evaluation of the allegedly offending statement may be done on a case-by-case basis." *Id.*

I recognize that the distinctions articulated by the Majority—capital penalty cases versus non-capital cases and the intended target of the message—are legitimate, and the Majority's rationale is well-expressed. Nevertheless, given this Court's supervisory authority over the conduct of attorneys, in my view application of these distinctions forces courts to patrol too fine a line. For over two decades, this Court has warned against "send a message" statements by either side in a criminal case. *See DeJesus,* 860 A.2d at 115–17 (citing, *inter alia, Commonwealth v. Crawley,* 514 Pa. 539, 526 A.2d 334, 344 (1987)). *DeJesus* was, of course, a capital case and the Majority is correct in reiterating the particular concerns that "send a message" statements engender in the penalty phase of capital cases. But *DeJesus* also expressed a more generalized growing impatience respecting all "send a message" statements in the criminal arena. *DeJesus* quoted, with emphasis, the following language from *Commonwealth v. Hall,* 549 Pa. 269, 701 A.2d 190, 203 (1997), which could not be more clear: "[W]e advise all parties in criminal matters before any court in

the Commonwealth to refrain from such exhortation in the future." 860 A.2d at 117.

The persistence of such references, notwithstanding our repeated disapproval of exhortations invoking such "external irrelevancy," (as characterized in *DeJesus*) suggests a need for a bright-line rule. The Court discussed at length the supervisory concerns implicated by such arguments in *DeJesus*:

> This Court well appreciates the pressures and challenges of trying criminal cases, and particularly cases where the ultimate penalty is involved. We also recognize that there are many things that occur in the course of a trial which are beyond the control or anticipation of counsel and the trial judge—such as witnesses, jurors or spectators acting inappropriately. But one aspect of a trial which is far more subject to rational control is the behavior of attorneys— officers of this Court whose professionalism is absolutely indispensable to the fair administration of justice in this Commonwealth. Lawyers have an obligation to be aware of, and to abide by, the law governing the conduct of the matters in which they are involved. This Court's unambiguous directive in *Hall* was not aimed at the conduct of witnesses, or police officers, or jurors, or court staff, or judges: it was aimed directly at counsel. Moreover, it concerned a matter and stage of trial over which counsel have unique, indeed premeditated control: *i.e.*, what it is they intend to say to the jury. When this Court issues a directive concerning what is permissible at that stage, we expect officers of the Court to abide by that directive.

860 A.2d at 118.

Despite the foregoing, it appears that prosecutors still return to the "send a message" argument. The fact that resort continues to be made to such extraneous concerns suggests that lawyers employing the argument believe it is harmful or powerful enough to be worth the risk. Again, I believe that it is time that this Court send a message of its

320

own to the criminal bench and bar that this rhetoric can no longer be tolerated.

Justices SAYLOR and TODD join this dissenting opinion.