J-S47017-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
       :        PENNSYLVANIA
       :
      v.        :
       :
       :
ANTON SCOTT LOCKHART       :
       :
      Appellant     :   No. 1610 WDA 2017

Appeal from the Judgment of Sentence October 2, 2017
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000964-2017

BEFORE:   OLSON, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY McLAUGHLIN, J.:       FILED SEPTEMBER 12, 2018

Anton Scott Lockhart appeals from his October 2, 2017 judgment of sentence. Lockhart argues the trial court abused its discretion by denying his request for a cautionary instruction following allegedly improper argument from the Commonwealth, overruling his objection to the Commonwealth's cross-examination of Lockhart, and sustaining the Commonwealth's objection to counsel's question to Lockhart regarding the identity of a person in a video. We affirm.

On October 5, 2016, Ronald Stahon left his car running while he entered the Sacred Heart Ushers' Club in Erie, PA. N.T., 8/15/17, at 31-32. When he returned a couple minutes later, his car was gone. Id. at 33. He located the

_____

*   Retired Senior Judge assigned to the Superior Court.

car the following morning near West 20th Street.[1] Id. at 120. There was a video of the theft, but, due to the video's quality, police were unable to determine the perpetrator's facial features. Id. at 108.

The police obtained evidence from the car including a handwritten "contract" between Gina Desko and Lockhart; partial fingerprints from the front driver's side door handle and driver's side rear window; a compact disc ("CD"), which also had a fingerprint; a notebook containing names, including Lockhart's name; a receipt from Liberty Iron Metal with Lockhart's name; and a purse. Id. at 67-79, 112-14. The Pennsylvania State Police Crime Lab found Lockhart's thumb print on the CD and two of Lockhart's fingerprints on the driver's side rear window. Id. at 76, 98-99, 101.

At trial, Detective Jacob Letkiewicz testified that he had been with the Erie Police Department for 20 years and in the Property Division for 9 years. Id. at 106. He stated that he spoke with Lockhart, who was at the Erie County Prison. Id. at 114. Detective Letkiewicz asked Lockhart where Desko lived, but did not mention where the car was located or who found it. Id. at 119-20, 124, 128. In a transcript of a phone call Lockhart made from prison, Lockhart mentioned that the victim located the car and where he found it. Id. at 123.

_____

[1] When asked where he located the car, Stahon stated "I think it was 21st." N.T., 8/15/17, at 38. However, the police department had the car towed from West 20th Street. Id. at 120.

- 2 -

Gina Desko testified that she had an ex-boyfriend, who she described as 6′ to 6′1″ and of medium build. N.T., 8/16/17, at 13-15. She testified that the ex-boyfriend had been friends with Lockhart, but that the relationship became awkward after Lockhart and Desko began dating. Id. at 15. She stated that the ex-boyfriend developed an animosity toward Lockhart. Id. at 15-16. She further testified that she moved from her house on West 20th Street in August 2016, but that she then began staying with a friend, who also lived on West 20th Street. Id. at 20-21.

Lockhart also testified at trial. He stated that Detective Letkiewicz kept referring to West 20th Street and, therefore, Lockhart concluded that the car had been found on West 20th Street. Id. at 26. His counsel asked him if he was the individual in the video, to which he responded "no." Id. at 32. Counsel then asked "Do you have any idea who it might have been after watching the video?" Id. at 32-33. The Commonwealth objected because it called for speculation, and the trial court sustained the objection. Id. at 33.

During cross-examination of Lockhart, the Commonwealth asked about Detective Letkiewicz:

> Q: Now, Detective Letkiewicz came to speak to you about this?
>
> A: Yes.
>
> Q: You heard his testimony. You heard it yesterday, right?
>
> A: Yes.
>
> Q: And he testified that the interaction took place and he asked you about Gina Desko. Do you remember that?

A: Yeah. It did take place. He did ask me about Gina.

Q: And he said it involved a stolen car?

A: Yes.

Q: Okay. Now, you heard his testimony that he never told you where the car was recovered. You heard that testimony first of all, right?

A: Yes.

Q: You testified that Detective Letkiewicz is just straight-up lying?

A: Yeah, he kept saying that, West 20th, West 20th. He kept bringing that up and telling me about the car. Told me about the notebook. I said, yeah, that was my notebook. And I made an assumption on the phone calls to my son's mother that that's where that car was, you know – they found it.

Q: Okay. And he also testified that you somehow knew on the prison tapes that the victim had located the car; do you remember that testimony?

A: Yes.

Q: And that detail would not be, in any way, relevant to an investigation as to who did it, fair to say?

A: Yeah.

Q: But you still somehow knew that the next day?

A: He told me that. He told me the vehicle – Mr. Stahon had located the vehicle, he had told me this in the attorney/client privilege room that wasn't recorded. And, you know, the second time he didn't – he came in with a recording device that he said he didn't have. I don't understand why none of this wasn't recorded, so.

Q: So when Detective Letkiewicz summarized – Detective Letkiewicz has been a police officer for 20 years and a detective for – I think he said seven, but that's a guess. He just – and he referenced his report, multiple times, that he produced right after that, he's just making that up?

A: Making? What is he making up?

- 4 -

Q: When he says that I didn't tell him these things, he's just outright lying?

A: Yes, sir. Yes.

Q: And he was under oath yesterday?

A: Yes.

[Defense Counsel]: Objection, Your Honor. He's badgering the witness.

THE COURT: Overruled. Go ahead.

BY [ASSISTANT DISTRICT ATTORNEY]:

Q: He was under oath yesterday?

A: Yes.

Q: Okay. And he's not currently charged with the crime is he, regarding this incident?

[Defense Counsel]: Objection. Vouching for the credibility of one witness over the other.

A: Is he what? I don't understand that.

Q: He is not currently charged with car theft of receiving stolen property, is he?

A: Not that I know of.

Q: And you are for this vehicle?

A: Yes.

Id. at 41-44.

During the Commonwealth's closing argument, the assistant district attorney ("ADA") stated:

Now, you may ask, with all this evidence, why am I here? You're here because you have a duty. And every individual has a right to a trial. They have a right to hear the evidence, to make the Commonwealth call all the witnesses, to show all the evidence. They have a right to an attorney to argue for them vehemently. They have a right to be heard by a

jury of their peers. And then the jury has a duty to listen to the evidence and give it a fair shake, a fair shake that leads to one conclusion. And as you think about that, I want you to remember your duty, you're not here just for the defendant, you're here for the community.

Id. at 78. Lockhart objected, and the trial court sustained the objection. Id.

The trial court instructed the jury, including the following:

Now, as the fact finders in this case, you heard the evidence. It's your duty to make the findings of fact as you find them to be. In this trial, as in almost all trials, there's conflicting evidence and so we ask you, as jurors, to resolve those conflicts. The way you do that is by making credibility determinations. And for every witness that you heard in this case, you're free to accept everything, some or none of what the witness testified to.

. . .

In arriving at a verdict, you should not concern yourself with any possible future consequences of your verdict including what the penalty might be and I stress that because you are the fact finders. You have to listen to the evidence, determine the facts, apply the law as I've given it to you and arrive at a verdict and that is without concern for the consequences or sympathy of the victim or concern for a penalty including what the penalty might be.

I often say to jurors, you're like the umpire in a baseball game. The umpire in the baseball game has to call a pitch, it's either a strike or a foul. . . . A runner is either out or safe. Now, in the back of the umpire's mind, he or she knows that there is a consequence to the call the umpire has to make. It's going to help one side and hurt the other side, but the umpire cannot allow that consequence to enter into the – a verdict or the call you have to make.

You, as the fact finders in this case and as the jurors, you are like the umpire. You have to make the call as to what the evidence is, apply the law whether the Commonwealth has met its burden of proof without regard to the consequences of that decision. So, it has to be a clinical analysis in that sense. And if you stray beyond that, then

- 6 -

you are violating, really, your oath as jurors. If that occurs, then I will remind the other jurors that we can't go there. We can't talk about the consequences of the verdicts, because that's not our job.

Id. at 83-89. Lockhart requested that the court issue an instruction to address the Commonwealth's suggestion that the jury consider the community. Id. at 91. The trial court declined to issue a cautionary instruction, noting that the instruction to determine the facts and apply the law and to make a clinical judgment covered the concern. Id. at 91.

On August 16, 2017, a jury found Lockhart guilty of receiving stolen property, 18 Pa.C.S.A. § 3925(a), and theft by unlawful taking, 18 Pa.C.S.A. § 3921(a). On October 2, 2017, the trial court sentenced Lockhart to 33 to 66 months' incarceration and one year of probation for the theft by unlawful taking conviction, and found the conviction for receiving stolen property merged for sentencing purposes. Lockhart filed a post-sentence motion, which the trial court denied. Lockhart filed a timely notice of appeal.

Lockhart raises the following issues on appeal:

> 1. Did the trial court commit an abuse of discretion or error of law when it declined to provide a cautionary jury instruction in response to the Commonwealth's argument that the jury should convict because of the need to protect the community?
>
> 2. Did the trial court commit an abuse of discretion or error of law when the court overruled the defense objection to the Commonwealth's attempt to impermissibly vouch for the credibility of one witness over others?
>
> 3. Did the trial court commit an abuse of discretion or error of law when the court sustained the Commonwealth's objection to defense elicited testimony from [Lockhart] as

to the identity of the perpetrator of the theft seen in the Commonwealth's video?

Lockhart's Br. at 9 (unnecessary capitalization and suggested answers omitted).

Lockhart first argues that in its closing argument the Commonwealth impermissibly urged the jury to send a message to the community and asked the jury to respond to an attack on the community. He further maintains that, although the trial court properly sustained Lockhart's objection, the trial court erred when it denied his request for a cautionary instruction. He maintains that the instructions the trial court provided did not cure the allegedly prejudicial remark, as it did not inform the jury to not consider the impact of its verdict on the community.

"Our standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." Commonwealth v. Baker, 24 A.3d 1006, 1022 (Pa.Super. 2011).

A prosecutor may not "urg[e] a criminal jury to 'send a message' to the community or the criminal justice system," or portray the community as under attack, and then "ask the jury to respond to the attack with its verdict." Commonwealth v. Patton, 985 A.2d 1283, 1287 (Pa. 2009). The Pennsylvania Supreme Court has explained:

> A jury is sworn to render a verdict based solely on the evidence presented; arguing extraneous reasons for a verdict misdirects the jury from that purpose. Such arguments inject irrelevant matters into the deliberation; they invite the jury to focus on matters beyond its ken.

Id. "[A] prosecutor's comments must be examined within the context in which they were made." Commonwealth v. Hall, 701 A.2d 190, 202 (Pa. 1997). Further, an improper statement by a prosecutor "will warrant a new trial only when the unavoidable effect of the statement is to prejudice the jury against the defendant, or prevent it from weighing the evidence objectively and rendering a true verdict." Patton, 985 A.2d at 1287.

Here, during closing arguments, the ADA said:

> Now, you may ask, with all this evidence, why am I here? You're here because you have a duty. And every individual has a right to a trial. They have a right to hear the evidence, to make the Commonwealth call all the witnesses, to show all the evidence. They have a right to an attorney to argue for them vehemently. They have a right to be heard by a jury of their peers. And then the jury has a duty to listen to the evidence and give it a fair shake, a fair shake that leads to one conclusion. And as you think about that, I want to you to remember your duty, you're not here just for the defendant, you're here for the community.

N.T., 8/16/17, at 78.

The trial court sustained Lockhart's objection to the ADA's statement that the jury was "here for the community," but denied his request for a cautionary instruction. The court determined that no cautionary instruction was needed because the court had instructed the jury that its duty was to determine the facts and apply the law, and that it was not to consider the consequences of the verdict. Trial Court Opinion, filed Feb. 13, 2018, at 2 ("TCO"). We agree.

When read in context, the ADA's reference to a duty to the community did not prejudice the jury against Lockhart or prevent the jury from weighing the evidence and rendering a true verdict. The comment came after reminding the jury that it must review the evidence and provide Lockhart a "fair shake." The ADA did not request that the jury "send a message" for the community, suggest that the community was under attack, or suggest that the jury should base its verdict on anything other than the evidence presented at trial. Further, the trial court instructed the jury that it may base the verdict on only the facts, that it had to make a "clinical analysis," and that it could not consider any consequences of its verdict. These instructions ensured that the jury would not base its decision on any extraneous consideration, including the "community." Accordingly, we conclude the trial court's denial of the request for a cautionary instruction was not an abuse of discretion.

Lockhart next argues that the trial court erred when it overruled an objection during the Commonwealth's cross-examination of Lockhart. He argues that the Commonwealth, through its questions, impermissibly vouched for the credibility of Detective Letkiewicz. He alleges the Commonwealth did this by re-iterating in the question the number of years Detective Letkiewicz had served as a police officer and the number of years he served as a detective, which suggested to the jury "that the prosecutor placed veracity in the officer's testimony because he was an officer/detective and because of his years of experience." Lockhart's Br. at 25. He also claims on appeal that the Commonwealth placed information not on record before the jury, as Detective

Letkiewicz had not testified that he had seven years of experience as a detective. Lockhart's Br. at 25.

"Cross-examination may be employed to test a witness' story, to impeach credibility, and to establish a witness's motive for testifying." Commonwealth v. Ballard, 80 A.3d 380, 394 (Pa. 2013) (quoting Commonwealth v. Chmiel, 889 A.2d 501, 527 (Pa. 2005)). "The scope of cross-examination is a matter within the discretion of the trial court" and we will not reverse absent an abuse of that discretion. Id. (quoting Chmiel, 889 A.2d at 527).

A prosecutor may not "express a personal opinion as to . . . the credibility of a defendant or other witnesses." Commonwealth v. Koehler, 737 A.2d 225, 240 (Pa. 1999). However, "the prosecutor may comment on the credibility of witnesses [and] is allowed to respond to defense arguments with logical force and vigor." Commonwealth v. Lawrence, 165 A.3d 34, 43 (Pa.Super. 2017) (quoting Commonwealth v. Judy, 978 A.2d 1015, 1020 (Pa.Super. 2009)). Improper bolstering occurs where: (1) the prosecutor "assure[s] the jury the testimony of the government witness is credible," and (2) this assurance is "based on either the prosecutor's personal knowledge or other information not contained in the record." Commonwealth v. Williams, 896 A.2d 523, 541 (Pa. 2006) (citing United States v. Walker, 155 F.3d 180, 187 (3d Cir.1998)).

Here, the trial court found that the ADA was arguing in favor of the credibility of its witness over Lockhart. TCO at 4. It noted that the ADA did not

- 11 -

express a personal opinion about a witness's credibility. Id. at 5. Rather, in response to Lockhart's testimony contradicting Detective Letkiewicz's testimony, the ADA asked questions to establish reasons the jury should credit Detective Letkiewicz, not Lockhart. Id. The trial court noted the questions were designed to show Lockhart had a motive to lie, and Detective Letkiewicz did not.

Further, the ADA did not reference his personal knowledge of information not in the record. In his question, the ADA said Detective Letkiewicz had been an officer for 20 years "and a detective for – I think he said seven, but that's a guess." The ADA, therefore, acknowledged he did not specifically recall the Detective's testimony as to his experience. During his testimony, Detective Letkiewicz did not say when he became a detective. He did, however, state his full name, which included that he was a detective, and he testified that he had been in the Property Division for nine years. Any discrepancy between the question and the testimony was not assurance of credibility "based on either the prosecutor's personal knowledge or other information not contained in the record," and does not constitute improper vouching.

We conclude the trial court did not abuse its discretion in permitting the Commonwealth to question Lockhart as it did. The questions were not impermissible bolstering of the witness, as they did not assure, based on the prosecutor's knowledge or information not in the record, that Detective

Letkiewicz was credible. Rather, the line of questioning attempted to establish that Lockhart had a motive to lie, and Detective Letkiewicz did not.

In his last issue, Lockhart argues that his defense at trial was that another individual, with a motive to implicate Lockhart, committed the theft and that the trial court abused its discretion when it sustained the Commonwealth's objection and prevented Lockhart from identifying the perpetrator in the video. He maintains a foundation had been laid as to Lockhart's personal knowledge and Lockhart should have been permitted to testify as to the person's identity.

During direct examination, Lockhart was asked: "Do you have any idea who it might have been after watching the video?" N.T., 8/16/17, at 32-33. The Commonwealth objected stating that the question called for speculation, and the trial court sustained the objection. This was not an abuse of discretion. The trial court noted the question, which asked whether Lockhart had "any idea" who was in the video, was a "matter of pure speculation fueled by a desire to pin the crime on a third party." TCO at 6. The court noted that Lockhart could have laid a better foundation, but did not do so. Id.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2018

- 13 -