J-S26006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
:
KYRRON E. BUFORD :
:
Appellant : No. 3463 EDA 2017

Appeal from the Judgment of Sentence September 21, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0001512-2016

BEFORE:   PANELLA, P.J., GANTMAN, P.J.E., and PELLEGRINI[*], J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED AUGUST 29, 2019**

Kyrron E. Buford appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following his conviction of robbery with threat of immediate serious injury, ***see*** 18 Pa.C.S.A. § 3701, robbery of a motor vehicle, ***see*** 18 Pa.C.S.A. § 3702, conspiracy to commit robbery with threat of immediate serious injury, ***see*** 18 Pa.C.S.A. § 903, receiving stolen property, ***see*** 18 Pa.C.S.A. § 3925, and carrying a firearm without a license, ***see*** 18 Pa.C.S.A. § 6106.  The trial court sentenced Buford to not less than 26 months nor more than 52 months of incarceration followed by 48 months of probation.  After a thorough review of the record, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

This case began on October 27, 2015, when the victim, a delivery driver, reported to a Philadelphia police officer that he had been robbed and carjacked. The victim was able to describe his assailants, but suspects were not identified on that date. His stolen vehicle was not immediately located.

The next day, the victim found his car being driven by Buford. He recognized it due to specific dents on its surface and sounds that it made. The victim proceeded to flag down an Upper Darby police officer. Acting on this information, several police officers attempted to stop the victim's vehicle. After a failed effort to mount a curb, Buford struck one of the officers' vehicles and came to a stop. Buford was then taken into custody. In the vehicle was a black handgun and handgun holster.

The victim testified at Buford's preliminary hearing, but was unable to testify at trial. As a result, the victim's testimony from Buford's preliminary hearing was read to the jury. This testimony indicated that the victim tried to make a food delivery to the ordering address, but two men, wearing hooded sweatshirts and brandishing guns, ambushed him.

The Commonwealth also presented evidence that the number used to place the delivery order referenced West Philadelphia in its username. Moreover, October 27, 2015 text messages sent from and received by Buford's phone established that he was not at his mother's residence on that date and, through cell tower data, placed his phone in the area of the robbery. *See* Trial Court Opinion, 11/5/18, at 2-5.

In this appeal, Buford raises four questions for our review:

1)    Did the trial court err in admitting text messages containing hearsay evidence?

2)    Did the trial court err in denying Buford's request for a missing evidence charge?

3)    Did the trial court err in denying Buford's proposed instruction informing the jury that the Commonwealth's transcripts were only a listening tool and that if what the jury heard differed from the transcript, it should be guided by what it heard?

4)    Did the trial court err in denying Buford's request for a mistrial in response to improper comments by the Commonwealth in closing argument?

*See* Appellant's Brief, at 12-17.

First, Buford contends that it was erroneous for the trial court to permit the admission of five incoming text messages "purportedly authored by [Buford's] mother and an unknown author that were found in a forensic analysis of [Buford's] flip phone." Appellant's Brief, at 12. Buford asserts that the Commonwealth, in its closing argument, contended that these messages were "proof that [Buford] was not home at the time of the crime, i.e. proof of the matter asserted in [Buford's] mother's text." *Id*. Accordingly, Buford believes he was deprived of his constitutional right to confront the text declarants as to their states of mind and location at the time the texts were sent and was instead found guilty, at least in part, due to hearsay evidence.

As noted by the Commonwealth in its brief, Buford's challenge is actually not a challenge to the trial court's admission of these texts. Rather, it is more

properly classified as a claim of prosecutorial misconduct during closing arguments.

Initially, we note that Buford has not identified where he preserved this issue at trial through a timely objection. Our review of the record does not reveal any objection on this issue during the prosecutor's closing argument. Accordingly, this issue is waived. *See* Pa.R.A.P. 302(a).

Even if we were to reach this issue, we conclude it would merit no relief.

[A]ny challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict. The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial.

*Commonwealth v. Jaynes*, 135 A.3d 606, 615 (Pa. Super. 2016) (internal citations and quotation marks omitted).

Buford highlights the prosecutor's remark that the texts from Buford's mother indicate he was not home at the time they were sent. Even if we were to assume that Buford correctly characterizes the legal effect of these remarks, an issue which we explicitly do not reach, he cannot establish that the remarks had the unavoidable effect of improperly biasing the jury such

that they could not possibly have weighed the evidence objectively. Buford's first issue on appeal merits no relief.

In his next argument, Buford avers that the trial court should have provided the jury with a "missing evidence charge" because the Commonwealth failed to introduce photographs that demonstrated where the bag containing the gun was located inside the vehicle. According to Buford, the Commonwealth had a natural interest to produce the photographs if they were favorable to their position that Buford constructively possessed the gun. Buford contends that because the Commonwealth did not produce such photographs, he was entitled to adverse inference instruction.

"The trial court has wide discretion in fashioning jury instructions." *Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006). "The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal." *Commonwealth v. Miller*, 172 A.3d 632, 645 (Pa. Super. 2017) (citation omitted). "In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1257 (Pa. Super. 2014) (citation omitted).

Buford requested a charge titled "Failure to Produce Document or Other Tangible Evidence at Trial." **See** Pa. SSJI 3.21B (Crim).[1] In order to justify giving this instruction to the jury: 1) the item must be available to one party and not the other; 2) the item must contain or show special information material to the issue; and 3) the item must not be merely cumulative evidence. **See id**.

The trial court found that the Commonwealth did not receive the at-issue photographs until the night before trial, where they were then immediately provided to Buford. In addition, the trial court asserts the photographs contained evidence that was already admitted or otherwise available.

We find that the record supports the trial court's decision not to provide the jury with a missing evidence charge. Buford has failed to demonstrate that the Commonwealth had in its unilateral possession the photographic evidence for an inordinate amount of time and then failed to disclose the same to Buford. Obviously, the Commonwealth cannot provide to Buford discovery that it does not have, and it is uncontroverted that the relevant police authority did not disclose the photographs to the Commonwealth until the eve of trial.

---

[1] We note that "[t]he Suggested Standard Jury Instructions themselves are not binding and do not alter the discretion afforded trial judges in crafting jury instructions; rather, as their title suggests, the instructions are guides only." **Commonwealth v. Simpson**, 66 A.3d 254, 274 n. 24 (Pa. 2013) (citation and quotation marks omitted).

Moreover, even after the Commonwealth's disclosure, Buford did not seek to admit that evidence. Under these circumstances, we conclude Buford has failed to establish that the trial court abused its discretion. Buford's second issue on appeal merits no relief.

Third, Buford proclaims that the court erred when it rejected his proposed jury instruction on the issue of transcripts of recorded prison phone calls. During trial, the Commonwealth played the recordings for the jury and provided written transcripts. Buford proposed that the court instruct the jury that the transcripts were merely a "listening tool." The court refused to provide Buford's proposed instruction.

Our review of this claim must be based on a review of the court's charge to the jury as a whole. *See Commonwealth v. Montalvo*, 986 A.2d 84, 99 (2009). Our task is to determine whether the charge was fair and complete, not whether any specific "magic words" were included. *Id*. The trial court is granted broad discretion in phrasing its instructions. *See Commonwealth v. Gibson*, 951 A.2d 1110, 1142 (Pa. 2008). We will reverse only upon a finding that the court abused its discretion or committed an error of law. *See Commonwealth v. Galvin*, 985 A.2d 783, 799 (Pa. 2009).

Our Supreme Court has concluded that "it is permissible for jurors to review transcripts of tapes so long as a limiting instruction is issued and the person responsible for the transcription can be cross-examined with the opportunity for an alternative transcription to be presented by the defendant." *Commonwealth v. Bango*, 742 A.2d 1070, 1073 (Pa. 1999). While review

of transcripts are permissible, the jury must understand "that the transcripts [are] to be used only a guideposts and not as verbatim translations." *Id*.

Here, although the court initially refused Buford's proposed instruction, it gave a substantially similar instruction when the jury requested the opportunity to review the transcripts during deliberations. When the jury was brought back into the courtroom to listen to the recordings, the court stated:

> We are playing the tape because the tape itself is the most important piece of evidence when you are comparing the transcript versus what you hear. What you hear on the tape rules over what you are reading on the transcript.

N.T., Jury Trial, 5/5/17, at 11-12.

Buford concedes that the trial court subsequently instructed the jury that what it heard on the corresponding tape took precedence over what it was reading on the transcript. *See* Appellant's Brief, at 15. However, Buford claims the subsequent instruction could not cure the alleged error of not instructing the jury before deliberations began. *See id*. We disagree.

As noted previously, we do not require the court to utter magic words. The charge as a whole, including the instruction before the tapes were played during jury deliberations, were fair and complete. Importantly, Buford has not explicitly identified any issue with the transcripts. Under these circumstances, we conclude Buford is due no relief on this claim.

Fourth, Buford contends that the trial court erred in not declaring a mistrial when the Commonwealth made improper comments in its closing argument.

We have repeatedly endorsed the principle that a defendant is guaranteed the right to a fair trial, but not a perfect one. ***See, e.g.***, ***Commonwealth v. Rolan***, 964 A.2d 398, 410 (Pa. Super. 2008) (citation omitted). "Thus, a prosecutor's remarks do not constitute reversible error unless their unavoidable effect was to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." ***Id***. (citation omitted and formatting altered).

Buford takes issue with two of the Commonwealth's statements, with one suggesting that Buford is counting on the jury not to do its job and the other proclaiming that the jury members have the right to walk down streets without the fear of being robbed. ***See*** Appellant's Brief, at 16. Under ***Commonwealth v. Patton***, 985 A.2d 1283 (Pa. 2009), the Supreme Court expressed disfavor with encouraging a jury to "send a message" to the community or criminal justice system, as comments to that effect invite consideration of extraneous matters. 985 A.2d at 1288 (indicating that simply uttering anything analogous to imploring a jury to "send a message," no matter who is the subject of that phrase, should be put "on the taboo list").

Accordingly, given the purported target of the Commonwealth's statements, Buford asserts that the trial court violated the fundamental holding of *Patton*.

The Commonwealth is allowed to vigorously argue its case as long as its comments are supported by the evidence or constitute legitimate inferences arising from the evidence. *See Commonwealth v. Smith*, 985 A.2d 886, 907 (Pa. 2009). Rhetorical flair is permitted where it accurately reflects the evidence. *See Commonwealth v. Robinson*, 877 A.2d 433, 442 (Pa. 2005). As we have stated, "[a] prosecutor has great discretion during closing argument." *Commonwealth v. Brown*, 911 A.2d 576, 580 (Pa. Super. 2006).

> The relevant portions of the closing argument are as follows:
>
> Buford is counting on you to not do your job.
>
> I represent the Commonwealth, these are our streets. And just as I and just as [the victim] and just as you, have the right to walk down these streets without the fear of being robbed.

N.T., 5/4/17, at 27-28. Buford insists that the Commonwealth's statements suggest to the jury that "society is under attack," which is improper. However, the Commonwealth did not use the phrase "send a message," the operative words considered in the *Patton* case.

Instead, the Commonwealth implicitly referenced evidence that had been presented throughout the course of the trial. Specifically, the Commonwealth invoked audio recordings of Buford wherein he indicated that he did not believe the victim would testify, that his charges would get thrown

out, and Buford would "have a laugh" as a result. While the Commonwealth should refrain from making references to the community through its invocation of society's collective right to walk down streets without being robbed, we also conclude that the Commonwealth's phrasing in this particular instance neither rose to the level of a "send a message" decree nor painted the picture that, in effect, "society is under attack" and that a guilty verdict would ameliorate that condition.

As such, we do not find that the Commonwealth's closing argument exceeded what could be considered permissible oratorical flair, and Buford has not established his right to relief on this issue.

In finding that none of Buford's issues raised in this appeal warrant any relief, we affirm his sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/29/19