J-A12010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KEITH ROBERT SCHMOCKER, | |
| Appellant | No. 673 WDA 2018 |

Appeal from the Judgment of Sentence Entered December 7, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0010612-2016

BEFORE:  BENDER, P.J.E., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:              **FILED JULY 23, 2019**

Appellant, Keith Robert Schmocker, appeals from the judgment of sentence of 6-23 months' incarceration, imposed following his conviction for indecent assault.  After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

On August 18, 2016, [Victim] spent the evening celebrating the birthday of her best friend Janelle Krisulevicz.  After pre-party drinks at the home of Janelle's sister ([Appellant]'s wife) in West View[,] Janelle, [Victim], and a few friends ha[d] a few drinks at Rum Runners on Babcock Boulevard in the North Hills where they were joined by Janelle's brother-in-law[, Appellant].  Upon leaving Rum Runners at around 11:30 pm, [Appellant] and his wife drove Janelle and [Victim] back to [Appellant]'s home.  [Appellant] and his wife went to bed upstairs while Janelle, who was quite intoxicated, "passed out" on the couch.  At this time, [Victim] fell asleep on an oversized chair and ottoman next to Janelle.

[Victim] was then awake[ne]d by the feeling of someone touching her thigh under her dress and digitally penetrating her vagina. Upon opening her eyes[,] [Victim] was face to face with [Appellant,] who turned [Victim] on her back and pushed her legs

apart. He then whispered to her that there was "a bedroom upstairs[;]" it was at this time [Victim] became fearful she would be raped. [Victim] screamed for [Appellant] to "get off" and pushed him away from her and [Appellant] retreated to the kitchen. A crying and distraught [Victim] used her cellphone to call her then boyfriend, Officer Scott Seserko, and fled the residence. [Victim] drove to her apartment[,] where she met her boyfriend and they proceeded to West View Police Station where [Victim] recounted the night's events to Officer Gary Pavlecic, who contacted County Detectives.

Officer Pavlecic testified that although there was an odor of alcohol on [Victim]'s breath, she exhibited no signs of intoxication. [Victim] then proceeded to UPMC Passavant Hospital where she received a rape-kit. Parts of the rape kit were administered to [Victim] by Nurse Monica Wynne who is trained as a sexual assault nurse.

At 2:00 am on August 19, 2016, County Detectives Anthony Felicion and Darrin Gerlach responded to West View Police Department's request for assistance. Detective Felicion testified that he interviewed [Victim] at roughly 3:00 am and although she did have alcohol on her breath he did not believe her to be intoxicated. After interviewing [Victim], Detectives Felicion and Gerlach, accompanied by Officer Pavlecic, made contact with [Appellant] at his residence. Janelle Krisulevicz, who had been on the couch in the living room testified she was awoken by the sound of the steps creaking as her sister descended to open the door for the police. [Appellant] was asked to accompany them to Allegheny County Police Headquarters, which he did. The subsequent interview was recorded in both audio and video[,] which was played for the jury. During the interview, [Appellant] recount[ed] his employment history as both a nurse and an Air Force Reserve Medic and a buccal swab was administered to send for DNA testing. This [c]ourt witnessed [Appellant]'s reaction when he was informed of the accusations and his protestations of "no, no, no, no" were not credible. As detectives revealed more information to [Appellant] his story changed, until eventually he admitted he may have touched [Victim]'s genitals as he attempted to pick her up and became concerned his DNA might be present.

Scientist Ashley Platt of the Forensic Biology Section of the Allegheny County Office of the Medical Examiner, testified as to the testing she performed on the samples collected in the rape kit, as well as those collected from [Appellant]. Ms. Platt opined the

only DNA found in the victim was that of [Victim], and this result is possible in cases of digital penetration, because it is like "searching for a needle in a haystack."

First Lieutenant Michael A. Cilli, Medical Director of the 911th[ Airlift Wing of the Air Force Reserve Command,] as well as Head Medical Administrator for the Aeromedical Staging Squadron stationed in Pittsburgh[,] was called by the Commonwealth to testify in his capacity as an Air Force Medic. Lt. Cilli testified as to the training he and [Appellant] have received working as Air Force Medics and that they are trained in the use of the "fireman's carry." Lt. Cilli testified that they are not trained in a carry that would involve placing their hand behind a woman's back and their other hand on the vagina in order to lift.

Trial Court Opinion ("TCO"), 10/16/18, at 2-5 (citations omitted).

The Commonwealth charged Appellant with two counts of aggravated indecent assault, 18 Pa.C.S. §§ 3125(a)(1) and (a)(4), and two counts of indecent assault, 18 Pa.C.S. §§ 3126(a)(1) and (a)(4). Following a trial held on August 1, 2017, a jury convicted Appellant of one count of indecent assault (subsection (a)(1)), and acquitted him of the remaining offenses. On December 7, 2017, the trial court sentenced Appellant to 6-23 months' incarceration, and a consecutive term of 30 days' probation.[1] Appellant filed a timely post-sentence motion, which the court denied on April 5, 2018.

Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued its Rule 1925(a) opinion on October 16, 2018. Appellant now presents the following questions for our review:

---

[1] The trial court also ordered Appellant to register under Pennsylvania's Sex Offender Registration and Notification Act, 42 Pa.C.S. §§ 9799.10–9799.41, for a period of 15 years.

[I.] Did [t]he [trial c]ourt abuse its discretion and commit an error of law, as well as deny [Appellant] [d]ue [p]rocess, by failing to grant [his] motion for judgment of acquittal as no evidence or insufficient evidence was introduced at trial, failing to establish beyond a reasonable doubt that [Appellant] took any action or made any statements indicating he made contact with [the] complainant for the purpose of arousing or gratifying sexual desire?

[II.] Did [t]he [trial c]ourt abuse its discretion and commit an error of law, as well as deny [Appellant] [d]ue [p]rocess, by failing to grant [his] motion for a new trial based upon the weight of the evidence as the guilty verdict is contrary to the weight of the evidence and the interests of justice must be served by granting [him] a new trial?

[III.] Did [t]he [trial c]ourt abuse its discretion and commit an error of law, as well as deny [Appellant] [d]ue [p]rocess, by failing to grant [his] motion for a new trial based upon the weight of the evidence as the fact of the alleged victim's intoxication and/or the fact that [Appellant]'s DNA was not found on the victim are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice and the interests of justice must be served by granting [him] a new trial?

[IV.] Did [t]he [trial c]ourt abuse its discretion and commit an error of law, as well as deny [Appellant] [d]ue [p]rocess, by failing to grant [his] motion for a [n]ew [t]rial [b]ased [u]pon [c]onduct of the [p]rosecutor as remarks by the prosecutor made during opening statements, throughout trial, and in the closing argument were of such a nature or were delivered in such a manner that it may reasonably be said to have deprived [Appellant] of a fair or impartial trial and had the unavoidable effect of prejudicing the jury and forming in their minds a fixed bias and hostility toward [Appellant] such that they could not weigh the evidence objectively and render a true penalty determination, and the interests of justice must be served by granting [him] a new trial[?]

[V.] Did [t]he [trial c]ourt abuse its discretion and commit an error of law, as well as deny [Appellant] [d]ue [p]rocess, by failing to grant [his] motion for a [n]ew [t]rial [b]ased [u]pon [m]isconduct of [a w]itness as remarks made by witness Robert Huttenhower were of such a nature and were delivered in such a manner that it may reasonably be said to have deprived [Appellant] of a fair or impartial trial and had the unavoidable effect of prejudicing the

jury and forming in their minds a fixed bias and hostility toward [him] such that they could not weigh the evidence objectively and render a true penalty determination, and because the jury was swayed by a his outbursts of grief a new trial should be granted?

[VI.] Did [t]he [trial c]ourt abuse its discretion and commit an error of law, as well as deny [Appellant] [d]ue [p]rocess, by failing to grant [his] motion for a [n]ew [t]rial [b]ased [u]pon [i]mproperly [a]dmitted [t]estimony and [e]vidence which constituted a material part of the Commonwealth's case and which had a substantial effect on the verdict and were improperly admitted, and had the unavoidable effect of prejudicing the jury and forming in their minds a fixed bias and hostility toward [Appellant] such that they could not weigh the evidence objectively and render a true penalty determination, and a substantial wrong or miscarriage has been occasioned thereby entitling [Appellant] to a new trial when:

- Testimony of [Victim]'s employment with the Office of the District Attorney of Allegheny County was improperly admitted; and

- Witness Monica Wynne was asked to offer an opinion, but was not an expert witness and testified to speculation regarding alleged victims affect; and

- [Victim] was asked leading questions regarding a finger being inserted into her vagina and her relationships with people in the criminal justice system; was asked irrelevant questions regarding how long she had been dating witness Scott Seserko; was asked questions on redirect examination beyond the scope of cross examination; and

- Witness Scott Seserko was asked for his experience responding to sex assault cases with a lack of foundation being laid; and

- Expert Witness Ashley Platt was asked an improper question regarding whether male DNA would be detected on a vaginal swab if there was digital penetration; and

- Witness Lt. Michael Cilli was not qualified to answer questions regarding firemen's training and was asked an improper question regarding non-emergency training regarding a hold used to lift a woman by her vagina; and

- Witness Col. Sharon Colaizzi was asked questions on cross[-]examination beyond the scope of direct[-]examination; and

- Witness Janelle Krisulevicz was asked irrelevant questions regarding the time she spent and the activities she undertook at [Appellant]'s house and an irrelevant question about good times she had in the last year; and

- Witness Robert Huttenhower was permitted to testify but is not a prompt complaint witness, his testimony is needlessly cumulative, and his testimony caused unfair prejudice; and

- Witness Ashley Platt improperly testified beyond the scope of the four corners of her expert report.

[VII.] Did [t]he [trial c]ourt abuse its discretion and commit an error of law, as well as deny [Appellant] [d]ue [p]rocess, by failing to grant [Appellant]'s motion for a [n]ew [t]rial [b]ased [u]pon [i]mproper [i]nstructions to the [j]ury because a charge given by the [trial c]ourt to the jury was based upon a mistaken view of the applicable law when [t]he [c]ourt charged the jury as to Count 3 [(]Indecent Assault[)],] and the interests of justice must be served by granting [Appellant] a new trial?

[VIII.] Did [t]he [trial c]ourt abuse its discretion and commit an error of law, as well as deny [Appellant] [d]ue [p]rocess, in imposing sentence as [his] sentence was above the standard range, starting in the aggravated range, and exceeding the aggravated range[, and] fail[ed] to call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of [Appellant]; and the [c]ourt failed to consider the background and character of [Appellant], the circumstances of the crime, and impose a sentence that is consistent with the protection of the public and the rehabilitative needs of [Appellant]; and the [c]ourt failed to cite accepted aggravating factors or factors equivalent to those accepted, so the interests of justice will be served by modifying the sentence?

[IX.] Did [t]he [trial c]ourt abuse its discretion and commit an error of law, as well as deny [Appellant] [d]ue [p]rocess, by failing to vacate [the] sentence as any pending motions must be disposed of before sentencing, and only after such motions have

been argued and ruled upon may the trial judge [issue a] sentence…, and at the time of sentencing of [Appellant] a [m]otion for a [n]ew [t]rial was pending so the interests of justice will be served by vacating the sentence?

Appellant's Brief at 7-14 (unnumbered in original).[2]

Appellant's first claim concerns the sufficiency of the evidence. Our standard of review of sufficiency claims is well-settled:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (cleaned up).

Appellant was convicted under the following provision of the indecent assault statute:

A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces

---

[2] We remind Appellant's counsel that "[t]he statement of the questions involved **must state concisely the issues to be resolved**, expressed in the terms and circumstances of the case but **without unnecessary detail**." Pa.R.A.P. 2116(a) (emphasis added). Appellant's statement of the questions involved covers seven pages of his brief, whereas his summary of the argument covers five pages of the same. This strongly suggests that Appellant's counsel demonstrated little effort, if any, to conform to the Appellate Rules in the drafting of Appellant's brief.

for the purpose of arousing sexual desire in the person or the complainant and:

(1) the person does so without the complainant's consent;

18 Pa.C.S. § 3126(a)(1). "Indecent contact" is "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

Appellant argues "[n]o evidence was introduced at trial" that he "had indecent contact with the complainant for the purpose of arousing sexual desire in himself or the complainant." Appellant's Brief at 25. Thus, Appellant challenges the sufficiency of the Commonwealth's evidence in demonstrating the *mens rea* element of indecent assault—that the touching occurred for the purpose of arousing sexual desire. The trial court disagreed, reasoning that the jury could infer that the Commonwealth's burden had been met because*, inter alia*, the jury could infer Appellant's intent by the nature of the contact itself. **See** TCO at 10. We agree.

In **Commonwealth Capo**, 727 A.2d 1126 (Pa. Super. 1999), this Court agreed with an argument presented by the Commonwealth that "the gropings and pawings forcibly imposed on the victim are not consistent with artistic interest or friendship, but speak eloquently of a failed attempt to gratify sexual desire more directly." **Id.** at 1128. Here, the victim's testimony that she was awoken to Appellant's digitally penetrating her vagina is sufficient evidence of an intent to gratify sexual desire. A reasonable inference of such intent can be derived from the act itself, and we must "view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all

- 8 -

reasonable inferences to be drawn from the evidence." *Widmer*, 744 A.2d at 751. That other, asexual inferences are possible from the same act does not undermine this conclusion, as the jury was free to reject such inferences. Accordingly, Appellant's first claim lacks merit.

Appellant's second and third claims concern the weight of the evidence. Indeed, we can discern no difference between the claims, which both allege that the jury ignored "both the intoxication of the alleged victim and the lack of [Appellant]'s DNA on the alleged victim[,]" Appellant's Brief at 27, and that such facts "are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice[,]" *id.* at 29.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:
>
>> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion

within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (cleaned up).

Appellant's weight claims border on frivolity. He cites to no case law suggesting that a factfinder cannot find credible the testimony of victim of a sexual offense if they were intoxicated at the time the abuse occurred or when they reported it.[3] Nor does Appellant cite to any case law remotely suggesting that the absence of a defendant's DNA on the victim in a sexual assault case renders the victim's testimony describing the assault not credible.

Appellant cites to several cases for boilerplate weight-of-the-evidence and reasonable-doubt law, but provides no analysis of those cases in light of the facts presented in the case *sub judice*. Moreover, in none of those cases did a court conclude that the trial court abused its discretion in concluding that the verdict was not against the weight of the evidence. ***See Commonwealth v. Brown***, 648 A.2d 1177, 1191 (Pa. 1994) ("There is nothing in the record which was likely to shock the trial court's sense of justice and cry out for a new trial in order to permit justice to prevail."). In one case, ***In re J.B.***, 106 A.3d 76 (Pa. 2014), our Supreme Court remanded after concluding that the

---

[3] In any event, as discussed *infra*, numerous witnesses testified that Victim was not intoxicated.

juvenile defendant *had not waived* his weight-of-the-evidence claim, and did not even address the merits of that claim. In two other cases, the Supreme Court did not address a weight-of-the-evidence claim at all. ***See Commonwealth v. Fugmann***, 198 A. 99 (Pa. 1938); ***and see Commonwealth v. Green***, 141 A. 624 (Pa. 1928).

Here, the trial court rejected Appellant's weight claims for the following reasons:

> [Appellant] rather nebulously alleges that the victim's intoxication was "clearly of greater weight." This [c]ourt's review of the transcript shows four separate individuals, a nurse, two police officers, and a county detective who all stated they did not believe the victim to be intoxicated, as well as the victim herself.
>
> [Appellant] likewise alleges that great weight must be afforded to the fact that [his] DNA was not found on the vagina swab taken [from] the victim. Expert witness Ashley Pratt testified that this is often a common result and that finding DNA in this situation amounts to "finding a needle in a haystack." In fact, [Appellant]'s counsel managed to get the expert witness to appear to agree that touch DNA is of skeptical validity. The jury chose to believe the expert's testimony that the absence of DNA would not be unexpected in this kind of case. For the above reasons [Appellant]'s above claims must fail.

TCO at 11-12 (citations omitted). We agree with the trial court, and ascertain no abuse of discretion in its denial of Appellant's motion for a new trial based on the weight of the evidence.

In his fourth claim, Appellant alleges prosecutorial misconduct, contending that the prosecutor made remarks during opening arguments, throughout the course of the trial, and during closing arguments that ostensibly "deprived [Appellant] of a fair or impartial trial and had the

unavoidable effect of prejudicing the jury and forming in their minds a fixed bias and hostility toward [him] such that they could not weigh the evidence objectively…." Appellant's Brief at 30.

With one exception, all of the prosecutor's comments that are discussed in Appellant's Brief, *see id.* at 32-35, occurred during closing arguments. At no point did Appellant make a contemporaneous objection to those comments, nor does he point to the portion of the record where he objected.[4] Accordingly, he waived that aspect of his prosecutorial misconduct claim, as "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); *see also* Pa.R.A.P. 2117(c)(4) (requiring an appellant to identify in the statement of the case where in the record a claim was "timely and properly raised below"). Moreover, because Appellant failed to identify the specific remarks complained of in his Rule 1925(b) statement, the trial court was unable to address them. This constitutes an additional ground upon which to deem this aspect of Appellant's claim waived. **See**

_____

[4] Notably, Appellant provided a reproduced record in this case containing only portions of the trial transcripts. However, the full transcripts were not provided for our review and, thus, we could not discover where else in the record Appellant's claim might have been preserved. We remind counsel that: "It has repeatedly been held by our courts that the burden to produce a complete record for appellate review rests, solely with the appellant." **Commonwealth v. Dunkle**, 932 A.2d 992, 996 n.2 (Pa. Super. 2007) (quoting **Commonwealth v. Chopak**, 615 A.2d 696, 701 n.5 (Pa. 1992)).

*Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived.").

Furthermore, Appellant does not discuss any comments by the prosecutor made during the trial itself. Accordingly, that aspect of Appellant's claim is waived and/or meritless. However, the Commonwealth concedes that Appellant did object during opening arguments to the prosecutor's use of the term "predator" to describe him. Accordingly, we will review that aspect of Appellant's claim.

> It is well settled [that] a prosecutor may employ oratorical flair in arguing to the jury. Such arguments do not constitute prosecutorial misconduct when the remarks are based upon the evidence or proper inferences deduced therefrom. An improper statement during the prosecutor's closing [or opening] argument will warrant a new trial only when the unavoidable effect of the statement is to prejudice the jury against the defendant, or prevent it from weighing the evidence objectively and rendering a true verdict.

*Commonwealth v. Patton*, 985 A.2d 1283, 1287 (Pa. 2009).

Appellant provides numerous citations of boilerplate case law, but virtually no analysis of that case law in light of the Commonwealth's use of the term "predator" to describe Appellant during its opening argument. The Commonwealth argues:

> Pennsylvania's Appellate Courts have previously ruled that similar statements comparing criminals to hunters and victims as prey are permissible. *See Commonwealth v. Miller*, 897 A.2d 1281, 1291 (Pa. Super. 2006) ([holding that the] Commonwealth's opening and closing statements concerning use of noun "predator" and verb "preys" to describe defendant did not warrant new trial; defendant asked her victim for money and when refused, came back with hammer and knife and bludgeoned and stabbed her to

death, slitting her throat, and in the days that followed, she returned to victim's apartment and stole checks, credit cards, and victim's car, each time walking past victim's corpse sitting at kitchen table, such that defendant's actions could reasonably be termed predatory); ***Commonwealth v. Miles***, 681 A.2d 1295, 1300 (Pa. 1996) (concluding [that the] prosecutor's comparison of defendant's actions to the hunting style of "animals of prey" was not improper); ***Commonwealth v. Van Horn***, 797 A.2d 983, 989 (Pa. Super. 2002) (holding prosecutor's characterization of victim as prey was within the limits of proper oratorical flair). Here, as noted by the lower court, the trial testimony established that [Appellant] attempted to take sexual advantage of what he believed to be an unconscious woman. Describing [Appellant] as a predator was certainly the product of a fair deduction from the prospective evidence. Based on the evidence produced during trial, the "predator" characterization proved to be as applicable here as it was in ***Miller***, ***Miles*** and ***Van Horn***.

Commonwealth's Brief at 13-14.

We agree with the Commonwealth, and note that Appellant fails to distinguish this case from that of ***Miller***, ***Miles*** and ***Van Horn***. Accordingly, we conclude that the trial court did not err when it declined to sustain Appellant's objection to the Commonwealth's use of the term "predator." Thus, Appellant is not entitled to a new trial.

Next, Appellant asserts that Robert Huttenhower, Victim's father, testified in a manner that deprived him of a fair trial.[5] However, Appellant did not issue a contemporaneous objection to either remark complained of and,

_____

[5] When asked to describe his daughter, Mr. Huttenhower stated: "We have a nickname for her. She is our smiling girl. And she [was] very bubbly, always smiling, … prior to the assault." N.T., 8/2/17-8/8/17, at 295. When asked if the victim described the assault to him, he replied, "We did ask the details, which no father should hear, but she did give the details." ***Id.*** at 297. Appellant describes these statements as "outbursts of grief." Appellant's Brief at 41.

- 14 -

therefore, he waived this issue for our review.  Pa.R.A.P. 302(a).  In any event, even if we were to reach the merits of the claim, we agree with the Commonwealth that Appellant's characterization of Mr. Huttenhower's comments as outbursts of grief constitutes a "flagrant misrepresentation" of the record.  Commonwealth's Brief at 17.  As the trial court indicates: "There [were] no outbursts by Mr. Huttenhower.  There were no tears.  This [c]ourt even went as far as to place on the record that Mr. Huttenhower had conducted himself with the utmost dignity and restraint.  For [Appellant] to claim otherwise is simply, patently, and unequivocally false."  TCO at 13.  Accordingly, if Appellant had not waived this issue, we would deem it meritless.

In Appellant's sixth issue, he asserts no less than ten separate sub claims that different testimonial remarks were inadmissible, or that they were the product of improper questioning.  No common thread of evidentiary rules bind these claims.

As the Appellate Rules dictate, "[t]he argument shall be divided into as many parts as there are questions to be argued[.]"  Pa.R.A.P. 2119(a).  Additionally, the Rules state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority.  *Id.* Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived.  *See Commonwealth v. Murchinson*, 899 A.2d 1159, 1160 (Pa. Super. 2006) (deeming the appellant's claims waived under Rule 2119(a) because he

did not develop meaningful argument with specific references to relevant caselaw and to the record to support his claims); *see also Commonwealth v. Heilman*, 867 A.2d 542, 546 (Pa. Super. 2005) (recognizing that failure to provide "such discussion and citation of authorities as are deemed pertinent" may result in waiver); *Commonwealth v. Cornelius*, 856 A.2d 62, 77 (Pa. Super. 2004) (declining to review the appellant's claim where there was limited explanation and development of the argument).

As the Commonwealth accurately describes the argument presented in support of Appellant's sixth claim,

> [he] does not develop his claims in any meaningful way, nor does he bother to explain how each these various instances allegedly reflected an abuse of discretion by the trial court. He has cited no case law that would tend to specifically establish that any of these utterances were improper or inadmissible. His conclusory allegations utterly fail to satisfy his burden of persuasion on appeal or to establish that he is entitled to any type of relief.

Commonwealth's Brief at 18. Because Appellant's argument in support of his sixth claim constitutes a blatant and egregious violation of Rule 2119(a), we deem it, and all subsidiary issues contained within, waived.

In Appellant's seventh claim, he asserts that that trial court improperly instructed the jury that it could find Appellant guilty of indecent assault if he acted recklessly with regard to the victim's consent. Given that the element of indecent contact requires "the purpose of arousing or gratifying sexual desire, in any person[,]" 18 Pa.C.S. § 3101, he asserts it is not possible to "*recklessly* make indecent contact for a *purpose*." Appellant's Brief at 47 (emphasis added).

- 16 -

Appellant cites no authorities for this argument. The Commonwealth contends that Appellant initially objected to that portion of the jury instruction, but subsequently withdrew that objection. Commonwealth's Brief at 18. Indeed, in its Rule 1925(a) opinion, the trial court indicated "[d]efense [c]ounsel stated on the record that his own research convinced him of the fact that the instructions were correct." TCO at 14. Moreover, Appellant provides no analysis or counterargument suggesting that this claim was preserved for our review and his argument is, therefore, unresponsive to the trial court's opinion. Accordingly, we deem this claim waived as well.

In Appellant's penultimate claim, he asserts that the sentence imposed by the trial court constituted an abuse of its discretion.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v. Sierra***, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> [W]e conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).
>
> ***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. ***Commonwealth v. Mann***, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Sierra***, ***supra*** at 912-13.

As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. ***Commonwealth v. Malovich***, 903 A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. ***Id.***

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010).

Instantly, Appellant failed to include a statement pursuant to Rule 2119(f) in his brief. The Commonwealth objects to Appellant's noncompliance with that rule. Commonwealth's Brief at 21. "If the Commonwealth objects to the appellant's failure to comply with [Rule] 2119(f), the sentencing claim is waived for purposes of review." ***Commonwealth v. Griffin***, 149 A.3d 349, 353 (Pa. Super. 2016). Accordingly, Appellant's discretionary-aspects-of-sentencing claim is waived.

Finally, Appellant contends that the trial court erred when it failed to decide his motion for a new trial before sentencing him. The trial court addresses this claim as follows:

[Appellate] Counsel[, Ryan A. Mergl, Esq.,] is deliberately misconstruing the timeline and facts as presented in the transcript. Said motion was not filed until the morning of the sentencing hearing by appellate counsel who had just entered his representation on this case. Trial counsel had yet to withdraw. [N.T. Sentencing, 12/7/17, at] 30-31. Appellate counsel was asked directly by this [c]ourt "it is my understanding the [c]ourt has 120 days from the filing of this motion to dispose of the motion. Does everyone agree with that?" Attorney Merg[]l

- 18 -

responded "Yes, Your Honor." [**Id.** at] 31; 11-18. Attorney Merg[]l asked for oral argument on his motion and out of basic fairness this [c]ourt gave the Commonwealth thirty (30) days to file a responsive motion and set a date of January 31 to have argument. [**Id.** at] 32-33. Finally, Attorney Merg[]l then stated he wished to submit a brief on his motion within the thirty (30) days. [**Id.** at] 34-35. This [c]ourt finds this argument to be misleading, self-serving, specious, and one that is entirely produced by the actions of appellate counsel. Under appellate counsel[']s view of practice it would be possible for a defendant to avoid sentencing simply by inundating the [c]ourt with superfluous motions that would have to be disposed of prior to sentencing. That is not how justice works—determinations are made and a case moves forward in a timely and orderly fashion.

The above argument aside, this claim is meritless due to the fact that a Motion for a New Trial is an optional **post-sentence** motion under **Pennsylvania Rule of Criminal Procedure 720(B)(i)(a)(iv)**. By its very definition, [Appellant]'s motion should not have been ruled upon until AFTER sentencing. There is simply no merit to this claim and it must be dismissed.

TCO at 16-17 (emphasis in original).

Appellant argues that "[a]ny pending motions, such as motions for a new trial, must be disposed of before sentencing, and only after such motions have been argued and ruled upon may the trial judge sentence [the] defendant." Appellant's Brief at 51-52. He cites two cases for this proposition, **Commonwealth v. Souder**, 101 A.2d 693 (Pa. 1954), and **Commonwealth v. Middleton**, 364 A.2d 342 (Pa. Super. 1976). Appellant provides no analysis of either case in his argument.

In **Souder**, a four-paragraph opinion by our Supreme Court, the Court reversed the order *of the Superior Court,* which had remanded for resentencing, because "the defendants' motions for new trial remained undisposed of." **Souder**, 101 A.2d at 694. No analysis was provided by our

Supreme Court in that decision, nor did the High Court cite any previous decision, statute, or rule of procedure.

In **Middleton**, this Court applied former Pa.R.Crim.P. 1123, which had stated, in pertinent part, that "[p]ost-verdict motions must be decided before sentencing, because the appeal lies from the final Order of the trial court, which includes sentence." **Middleton**, 364 A.2d at 345 (quoting Rule 1123 (repealed)). The Commonwealth argues that since Rule 1123 is no longer in effect, Appellant cannot rely on that rule for relief. We agree that Rule 1123, now repealed, cannot provide Appellant relief.

However, Pa.R.Crim.P. 704 provides, in pertinent part, as follows:

**(B) Oral Motion for Extraordinary Relief.**

(1) Under extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial.

(2) The judge shall decide a motion for extraordinary relief before imposing sentence, and shall not delay the sentencing proceeding in order to decide it.

(3) A motion for extraordinary relief shall have no effect on the preservation or waiver of issues for post-sentence consideration or appeal.

Pa.R.Crim.P. 704(B).

Thus, *if* a trial court decides to consider a *post-verdict*, *pre-sentence* motion for a new trial, it must decide such a motion before proceeding to sentence a defendant. In other words, a trial court is not obliged to consider post-verdict motions at all, but may do so at its discretion. If it chooses to

consider such motions, Rule 704 dictates that the court "shall" rule on the motion before sentencing.[6] *Id.* Nevertheless, for the following reasons, Appellant is not entitled to relief.

It is clear from the record that the trial court treated Appellant's motion for a new trial as a prematurely filed post-sentence motion, not as a Rule 704(B) motion. After acknowledging that the motion had been filed, the trial court stated: "The [c]ourt's going to review that. The [c]ourt's going to make a determination as to whether it wants to have a hearing on this matter or not. It's my understanding the [c]ourt has 120 days from the filing of this motion to dispose of the motion." N.T. Sentencing, 12/7/17, at 31. Rule 704(B) has no provisions that contemplate a hearing before a decision is made on a Rule 704(B) motion. To the contrary, Rule 704(B)(2) dictates that the court "shall decide a motion for extraordinary relief before imposing sentence, ***and shall not delay the sentencing proceeding in order to decide it***." Pa.R.Crim.P. 704(B)(2) (emphasis added). By the same token, the court does not have 120 days from the filing of a Rule 704(B) motion to decide—the rule requires an immediate decision. However, for optional post-sentence motions filed pursuant to Rule 720(B), "the court shall … determine whether a hearing or argument on the motion is required[,]" ***see*** Rule 720(B)(2)(b), and the court has 120 days to decide such a motion, ***see*** Rule 720(B)(3)(a). Thus, it

---

[6] Notably, appellate counsel did not cite Rule 704(B) in the motion for a new trial filed on Appellant's behalf, orally at the sentencing hearing, or in Appellant's brief. As such, it appears that he arrived at a vaguely correct recitation of the applicable, current rule purely by accident.

is clear that the trial court treated Appellant's motion as if it were a prematurely filed, optional post-sentence motion filed pursuant to Rule 720(B), not as a Rule 704(B) motion. As the court was not required to consider a Rule 704(B) motion at all, we ascertain no error or abuse of discretion in the trial court's actions in this regard.

In any event, Appellant made no objection to the manner in which the trial court indicated it would address his motion. When apprised of the court's intention to determine whether a hearing was required, and to reach a decision within 120 days, counsel did not object. Indeed, counsel explicitly agreed with the court as to the manner in which it was going to proceed on deciding the motion. *See* N.T. Sentencing, 12/7/17, at 31. Finally, Appellant has provided no analysis, whatsoever, regarding how he was prejudiced by the court's failure to decide the motion prior to sentencing.[7] Thus, his final claim is waived, moot, and/or meritless.

Judgment of sentence *affirmed*.

---

[7] We note that Appellant's pre-sentence, post-verdict motion presented the same weight-of-the-evidence claim that he subsequently preserved in a post-sentence motion, and which we addressed above pursuant to issue III. Thus, Appellant has not been denied the opportunity to have that claim reviewed on the merits.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/23/2019